ZBIGNEIW J. WITCZAK *v.* MICHAEL GERALD ET AL.
(AC 20893)

Schaller, Flynn and Daly, Js.

Argued September 21, 2001—officially released April 9, 2002

*Jacques J. Parenteau,* for the appellant (plaintiff).

*Paul M. Shapiro,* assistant attorney general, with whom were *Paul S. McCarthy,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, *Gregory T. D'Auria,* associate attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellees (defendants).

*Opinion*

FLYNN, J. The plaintiff, Zbigneiw J. Witczak, appeals from the trial court's judgment dismissing his complaint, which alleged intentional interference with his employment contract and intentional infliction of emotional distress arising from the defendants' review of the plaintiff's candidacy for tenure status[1] at the University of Connecticut. Each of the defendants, Michael Gerald, Diane Burgess and Alexandros Makriyannis, recommended that the plaintiff be denied tenure. The university's board of trustees denied the plaintiff tenure and subsequently dismissed him from his employment at the university altogether. The court dismissed the plaintiff's complaint on the ground that the defendants were immune from suit under General Statutes § 4-165, which provides immunity from suit for certain state employees. The trial court concluded that § 4-165 immunized the defendants from suit because the plaintiff's complaint failed to allege conduct that was "wanton, reckless or malicious" and that fell within "the scope of their employment as . . . state employees." We dis-

---

[1] A "tenured" professor is protected against summary dismissal and may be "discharged only for cause . . . ." *Slochower* v. *Board of Education,* 350 U.S. 551, 554, 76 S. Ct. 637, 100 L. Ed. 692 (1956).

agree. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings not inconsistent with this opinion.

We turn first to the proper standard of review. In this appeal, the sole issue is whether the pleadings alleged conduct that falls within an exception to statutory governmental immunity from suit under § 4-165 such that the trial court's judgment of dismissal should be reversed. At the outset, we observe that the motion before the court, a motion to dismiss for lack of subject matter jurisdiction, was based solely on the allegations of the plaintiff's complaint and was not accompanied by affidavit or testimonial evidence. Under these circumstances, the facts alleged must be construed in the manner most favorable to the plaintiff. *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983). Since the motion to dismiss filed by the state employee defendants "does not seek to introduce facts outside of the record . . . it . . . admits all well pleaded facts . . . . *Brewster* v. *Brewster*, 152 Conn. 228, 233, 206 A.2d 106 (1964)." *Duguay* v. *Hopkins*, supra, 227.

As to both the interpretation of the pleadings and the interpretation of § 4-165, our review is plenary. See *Davenport* v. *Quinn*, 53 Conn. App. 282, 286–87, 730 A.2d 1184 (1999). "[T]he interpretation of pleadings is always a question [of law] for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded . . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insuffi-

cient . . . ." (Internal quotation marks omitted.) *Forte* v. *Citicorp Mortgage, Inc.*, 66 Conn. App. 475, 484–85, 784 A.2d 1024 (2001). With this standard of review in mind, we turn to the issue raised on appeal.

The following allegations, facts and procedural history are relevant to our disposition of this appeal. In 1996, the plaintiff was employed as an assistant professor in the school of pharmacy at the University of Connecticut, a state owned and operated university. In the fall of 1996, the head of the department of pharmaceutical sciences recommended to the dean of the school of pharmacy, the defendant Gerald, that the plaintiff be awarded tenure. The defendants Makriyannis and Burgess were members of an advisory council which evaluated the plaintiff's candidacy for tenure and ultimately recommended to the dean that the plaintiff be denied tenure. Gerald, as well as the majority of a faculty review board, took this recommendation under advisement and recommended to the chancellor of the university that the plaintiff be denied tenure. The chancellor accepted these recommendations and the board of trustees officially denied the plaintiff tenure in the summer of 1997. The plaintiff subsequently was also dismissed from his employment.

In count one of his complaint, the plaintiff alleged that the defendants "intentionally interfered with [the] plaintiff's employment agreement . . . ." The plaintiff alleged that the defendants refused "to adhere to procedures and protocol of the University of Connecticut during review of [the] plaintiff for tenure and in the creation of a record for tenure review . . . ." The plaintiff further alleged that "[w]ith regard to the handling of plaintiff's tenure case, [the] defendants acted in bad faith, inconsistent with the power they were given and the privilege they enjoyed as members of the Dean's Advisory Counsel and/or as the Dean."

Clarifying these allegations, the plaintiff specifically alleged, inter alia, that the defendants Burgess and Makriyannis intentionally and in bad faith destroyed a letter that supported the plaintiff's candidacy for tenure. The plaintiff alleged that Burgess and Makriyannis had themselves solicited the letter, and were required under contractual terms to preserve it in a formal record which was later relied on by all other persons reviewing his candidacy. The plaintiff alleged that this was done "in order to prevent [the plaintiff] from gaining favorable recommendation for tenure." The plaintiff alleged that Burgess and Makriyannis intentionally underreported to the tenure decision makers both the amount of funding and the number of publications that the plaintiff had achieved. The plaintiff alleged that he had notified Gerald of the inaccuracies after Gerald had also recommended that the plaintiff be denied tenure, but Gerald intentionally refused "to take any steps to forward correct figures" to the persons charged with reviewing his candidacy after that point, despite his contractual duty to do so. The plaintiff alleged that Burgess and Makriyannis intentionally broke "University Laws and By-Laws . . . [by] focus[ing] almost exclusively on the number of . . . publications . . . and on the amount of grant funding" in the first place.[2] Moreover, the plaintiff alleged that each of the defendants stood to gain school resources and enhance their own standing at the university if their bad faith and intentional misconduct were to lead to the plaintiff's dismissal.

Next, we consider the relevant law of governmental immunity and indemnification under § 4-165. "It is well established that the state or a city is immune from suit unless it consents to be sued by appropriate legislation

---

[2] The plaintiff alleged that the terms of his employment contract demand an evaluation of all of his "strengths and weaknesses . . . [rather than] any fixed numerical measuring of accomplishments."

waiving sovereign immunity in certain prescribed cases. See *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972). Thus, in a case where a government is the defendant, courts do not have subject matter jurisdiction unless such jurisdiction is statutorily conferred. The legislature, however, has carved out certain statutory exceptions to the general rule of sovereign immunity and allowed governmental entities to be sued under certain limited circumstances. *Berger, Lehman Associates, Inc.* v. *State*, 178 Conn. 352, 356, 422 A.2d 268 (1979) . . . ." (Citation omitted; internal quotation marks omitted.) *Brennan* v. *Fairfield*, 58 Conn. App. 191, 195, 753 A.2d 396 (2000), rev'd on other grounds, 255 Conn. 693, 768 A.2d 433 (2001). "[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Internal quotation marks omitted.) *Shay* v. *Rossi*, 253 Conn. 134, 168, 749 A.2d 1147 (2000). Section "4-165 . . . [is] in derogation of sovereign immunity . . . ." *Hunte* v. *Blumenthal*, 238 Conn. 146, 152, 680 A.2d 1231 (1996).

Section 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ." It remains uncontested in this appeal that the plaintiff alleged conduct that was caused in the discharge of the defendants' duties.[3] Thus, the issue on appeal is restricted to whether the plaintiff has alleged "wanton, reckless, or malicious" conduct by the defendants, such that this action would fall

---

[3] In the plaintiff's brief, the only issue treated is whether "the allegations of the plaintiff's complaint [were] sufficient to make out a cause of action for wanton, reckless and malicious conduct." Thus, the plaintiff does not take issue with the trial court's statement that "[i]t is not disputed that these three defendants were acting in the scope of their employment as University of Connecticut (state) employees . . . ."

within the statutory exception to the sovereign immunity provisions of § 4-165.

The defendants concede that the plaintiff's complaint alleged intentional misconduct. In fact, in their brief the defendants specifically paraphrase the plaintiff's allegations, in part, as stating that Burgess and Makriyannis "intentionally destroyed a letter in support of the plaintiff's application for tenure" and that "the defendants intentionally interfered with the plaintiff's employment contract . . . in creating a record that omitted information relevant to the tenure decision . . . ."

Making specific factual allegations, the plaintiff elucidated these broader allegations of intentional, bad faith interference with contract terms. For example, the plaintiff alleged that when Makriyannis and Burgess intentionally destroyed the letter which supported the plaintiff's candidacy for tenure, they did so "in order to prevent [the] plaintiff from gaining favorable recommendation for tenure." The plaintiff alleged that they proceeded deliberately to underreport the plaintiff's publications and grant funding while at the same time focusing "almost exclusively" on those incorrect figures in their written recommendation to Gerald. The plaintiff alleged that this incorrect information remained on the record throughout the tenure review process and that each decision to recommend denial or to deny tenure was based on that corrupted record.

With respect to Gerald, the plaintiff alleged that after he informed Gerald of the deficiencies in the record, Gerald was under a contractual duty to correct the record before and after it tainted the next levels of review, yet Gerald intentionally and in bad faith, refused to correct the record. In general, the plaintiff alleged that the defendants "all . . . deliberately destroy[ed] and omit[ed]" material that they were required to fur-

nish under the plaintiff's employment contract. The plaintiff also alleged the underlying illicit motive for the defendant's intentional, bad faith interference with his contractual rights and intentional infliction of emotional distress, namely, that the defendants would gain resources at the school of pharmacy. Construed broadly and realistically, the defendants concede, and we agree, that these specific factual allegations describe intentional misconduct. For this reason alone, the trial court's determination that the plaintiff's allegations invoked nothing beyond "claims of negligence" cannot stand.

The defendants argue, however, that although § 4-165 does not provide immunity for wanton, reckless or malicious damage or injury, it does provide immunity in the instance of *intentional* misconduct of the kind alleged.[4] This hypothesis is not supported by a fair reading of the statute and recent case law. First, we observe that it would indeed be an incongruous result if § 4-165 protected those who intentionally injure others while holding liable those who do not intend to injure others, but have only disregarded an unjustifiable risk of such injury. Our Penal Code, for instance, generally treats those who intentionally injure others as *more* culpable than those who recklessly injure.[5]

---

[4] In their brief, the defendants state: "[T]he plaintiff's allegations of intentional conduct do not rise to the level of wilful, wanton or reckless conduct to remove the bar of immunity of § 4-165 and subject the defendant state employees to liability in their individual capacity."

[5] For example, General Statutes § 53a-54a provides in relevant part that a "person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ." The crime of murder is punishable by life imprisonment or, if also a capital felony, by the penalty of death. See General Statutes § 53a-35a (1). General Statutes § 53a-55 (a), on the other hand, generally provides that a person commits a class B felony, punishable by between five years and forty years imprisonment, when "under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death . . . ."

Second, and more importantly, our Supreme Court's recent definition of "wanton, reckless and malicious conduct" in *Shay* v. *Rossi*, supra, 253 Conn. 181, encompasses the specific allegations of intentional misconduct at issue in this appeal. In *Shay*, our Supreme Court specifically defined "wanton, reckless or malicious," as the terms are used in § 4-165, to require a plaintiff to demonstrate "on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Id.

The plaintiff's omission of the word "reckless" and use of the words "intentional" and "bad faith" do not render these elements absent. These specific allegations of "intentional" malfeasance and "bad faith" meet the terms of the exception to statutory immunity under § 4-165. The exception delineates conscious disregard for the rights and safety of others as a minimum requisite element and level of egregiousness, which is present in intentional acts such as the plaintiff has alleged, where the actor intends both the causative act and the resulting harm. While legal distinctions exist within these depths of the human psyche, our legislature was not required to chart them to exhaustion. It was sufficient for the legislature to express the policy that if a state employee acts wantonly, recklessly or maliciously, the state will not immunize him from legal action arising

from that conduct. Our Supreme Court's general defini-
tion of "wanton, reckless and malicious conduct" in
*Shay* did not specifically state that "intentional" mis-
conduct was included. Nonetheless, we conclude that
as a necessary implication of that definition, it is also
meant to include the more culpable state of mind char-
acterizing intentional conduct of the kind the plaintiff
alleges in his complaint.

Surveying the allegations and facts at play in *Shay*
is illustrative. Although the court did not deal with iden-
tical language, the mode of conduct alleged was also
deliberate malfeasance. In *Shay*, the plaintiff alleged
that the defendants had maintained intervention mea-
sures, which are generally authorized for protecting
children from parental child abuse when there were
inadequate grounds to do so. *Shay* v. *Rossi*, supra, 253
Conn. 182. The allegations and facts were sufficient to
establish that the defendants "*knew* that [their] actions
were legally and factually unjustified . . . and that
they nonetheless [engaged in those actions] not for
the statutory purpose of protecting any of the Shay
children, but in order to justify those prior unjustified
actions." (Emphasis added.) Id. Although not explicitly
termed as such, these allegations and facts also indicate
scienter, asserting "intentional" and "bad faith" miscon-
duct. The court decided that such conduct is "more
than negligence or gross negligence." Id. Such inten-
tional, bad faith behavior "falls within the standard of
highly unreasonable conduct" excepted from § 4-165's
immunization. Id.

The legislative history of § 4-165 supports our inter-
pretation that the legislature intended to encompass
intentional misconduct in the phrase "wanton, reckless
or malicious . . . ." In 1983, the General Assembly
enacted a change in the relevant language of § 4-165.
See Public Acts 1983, No. 83-464, § 1. Prior to that
amendment, the phrase in question read "wanton *or*

*wilful,*" rather than "wanton, reckless or malicious." (Emphasis added.) General Statutes (Rev. to 1983) § 4-165. Our Supreme Court defines "wilful misconduct" as "intentional conduct" with "the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) *Dubay* v. *Irish,* 207 Conn. 518, 533, 542 A.2d 711 (1988). As elaborated previously, the plaintiff alleged deliberate misconduct: that the defendants intended not only to commit the acts in question, but also intended to cause the resulting injury of interference with his contractual rights. Thus, the prior version of § 4-165 also would not have immunized the defendants from this suit. On the day of its adoption, this change in the language of § 4-165 raised the same confusion that the defendants' argument demonstrates. Moments before enactment of the new language, Representative Robert G. Jaekle queried, "I would like to ask . . . why we are deleting the willful language on line 6. In other words, are we indeed going to be indemnifying state employees and officers for their willful conduct?" 26 H.R. Proc., Pt. 21, 1983 Sess., pp. 7498–99. Representative Richard D. Tulisano responded, "[T]he art of bill drafting in the last year or so has somehow gotten beyond my scope of ability to deal with any longer. I think the artisans who drafted this think, believe, and I believe also that willful is included in the word malicious." Id., p. 7499. Thus, the present language of "wanton, reckless or malicious" was not intended to bar actions sounding in deliberate misconduct. Rather, the plaintiff's allegations of deliberate misconduct are necessarily included in the broader language.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion DALY, J., concurred.

SCHALLER, J., concurring. Although I agree that the judgment of the trial court must be reversed, I believe that the decision of our Supreme Court in *Shay* v. *Rossi*, 253 Conn. 134, 749 A.2d 1147 (2000), is dispositive. In *Shay*, our Supreme Court defined language identical to that in the present case, and the *Shay* decision clearly encompasses the allegations of intentional misconduct at issue in this appeal. Id., 180–82. We are bound by our Supreme Court's definition of the language at issue in this case. See *Boretti* v. *Panacea Co.*, 67 Conn. App. 223, 231, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002). Accordingly, I would base our holding on the *Shay* decision alone, omitting the statutory discussion, the attempt to ascertain the intent of the *Shay* court and the discussion of legislative history. With those provisos, I respectfully concur in the result reached by the majority.