[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO DISMISS #117
CT Page 9842
 I BACKGROUND
The plaintiff, John Hanrahan, brings this action against the defendants, Gerard Egan, the high sheriff of New London County, Thomas Connors, the chief deputy sheriff of New London County, and the state of Connecticut. In his amended complaint filed November 1, 2001, the plaintiff alleges the following facts. On December 4, 1998, a verbal altercation occurred between special deputies, Steve Aquino and James Parks. At the time of this incident the plaintiff was a special deputy in the New London county sheriffs department and along with Aquino and Parks he was assigned to Transportation, at G.A. 10. This position involved the transportation of prisoners to and from court appearances. Connors, acting within the scope of his employment, ordered Deputy James Miller to conduct an investigation of the altercation that occurred on December 4, 1998, between Aquino and Parks. Miller submitted his findings to Connors on December 18, 1998. These findings indicated that Aquino was at fault for the altercation.
Connors and Egan had decided, prior to the investigation, that Parks should be blamed for the altercation. It was well known in the sheriffs department that Connors and Egan were looking for a way to discipline Parks. After reviewing Miller's findings, Connors and Egan were not happy with the results of the investigation. They therefore authorized Captain Daniel Tamborra to further investigate the incident. On December 23, 1998, Tamborra called the plaintiff on the telephone and asked him questions relating to his knowledge of the policies and procedures of the documentation required to transport prisoners. The plaintiff responded to some of Tamborra's questions and also told Tamborra that he was not a witness to the altercation between Aquino and Parks. On January 5, 1999, Tamborra called the plaintiff into an interview room and proceeded to ask him questions similar to the questions he had previously asked on the telephone. When the plaintiff responded to Tamborra's questions, Tamborra indicated that the answers were unacceptable. At the conclusion of this questioning, Tamborra gave the plaintiff a supplementary report which contained the questions and responses given during the interview. Tamborra asked the plaintiff to read and sign the report. The cover page of the report, which had been turned back behind the first page, was entitled "witness statement." The plaintiff refused to sign the report because he believed the questions asked were misleading and that they were designed to place blame for the altercation on Parks. The plaintiff feared that if he signed the report, he would be guilty of signing a false official statement. CT Page 9843
Later on January 5, 1999, the same day that the plaintiff refused to sign the statement, Tamborra issued a written reprimand to the plaintiff for turning off the radio in the transportation van during the last trip of the day. This practice was customary and accepted within the department and to the best of the plaintiffs knowledge, had not resulted in disciplinary action against other employees. On January 13, 1999, Connors, acting within the scope of his employment, and at the direction of Egan, prepared and distributed a four page memorandum reassigning the plaintiff from transportation to roving security, a considerably lower-paying position. The memorandum was a blacklist intended to demote the plaintiff and prevent him from transferring to higher-paying positions in the future. On three occasions in the year 2000, the plaintiff applied for open positions in the transportation section. Egan denied all three applications as retaliation against the plaintiff for refusing to indicate that Parks was responsible for the December 4, 1998 altercation and refusing to sign the statement that the plaintiff believed was false.
The plaintiff alleges that the defendants engaged in wrongful retaliation (counts one, two and three) and that his rights to free speech, equal protection and due process of law were violated under the constitution of Connecticut (counts four and five).
The defendants filed answers and special defenses. In their special defenses, the defendants assert that the court lacks subject matter jurisdiction over the plaintiffs claims, the claims are barred by the doctrine of sovereign immunity, the plaintiff has failed to exhaust administrative remedies and to obtain consent from the claims commissioner to bring suit pursuant to General Statutes § 4-160 (a), the plaintiff has failed to state a claim upon which relief can be granted, the plaintiff has failed to mitigate his damages and Connors and Egan are immune from personal liability pursuant to General Statutes § 4-165.
On February 6, 2002, the defendants filed a joint motion to dismiss the plaintiffs claims for lack of subject matter jurisdiction, and memorandum of law in support of the motion. Specifically, the defendants contend that the plaintiffs claims are barred by the doctrine of sovereign immunity and that the plaintiff has failed to exhaust his administrative remedies. On February 26, 2002, the plaintiff filed a memorandum of law opposition to the defendants' motion. On March 18, 2002, the defendants filed a reply memorandum in response to the plaintiffs opposition. The parties have not submitted any affidavits or other evidence in support of their respective positions. CT Page 9844
 II STANDARDS
Practice Book § 10-31 states that "[t]he motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . ." (Internal quotation marks omitted.) Shay v. Rossi, 253 Conn. 134, 140 n. 8, 749 A.2d 1147 (2000). "[A] claim that [the] court lacks subject matter jurisdiction [may be raised] at any time." (Internal quotation marks omitted.) Dowling v. Slotnik, 244 Conn. 781, 787, 712 A.2d 396, cert. denied, 525 U.S. 1017, 119 S.Ct. 542, 142 L.Ed.2d 451 (1998). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Community Collaborative of Bridgeport, Inc. v.Ganim, 241 Conn. 546, 552, 698 A.2d 245 (1997). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody, N.E., Inc.,239 Conn. 93, 99, 680 A.2d 1321 (1996).
"The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) Ferreira v. Pringle, 255 Conn. 330,346, 766 A.2d 400 (2001). Where, as here, a motion to dismiss for lack of subject matter jurisdiction is based solely on the allegations of the plaintiffs complaint and is not accompanied by affidavits or testimonial evidence, the facts alleged must be construed in the manner most favorable to the plaintiff. Witczak v. Gerald, 69 Conn. App. 106, 108,793 A.2d 1193 (2002). "It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Stepney Pond Estates, Ltd. v. Monroe, 260 Conn. 406, 417,796 A.2d 516 (2002). "[I]t is the law in our courts . . . that [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (Internal quotation marks omitted.) Melfi v. Danbury,70 Conn. App. 679, 689, ___ A.2d ___ (2002).
 III DISCUSSION
The defendants argue that, in the absence of allegations that Connors and Egan acted in excess of their statutory authority or in excess of an unconstitutional statute, the doctrine of sovereign immunity applies. In CT Page 9845 addition, the defendants contend that there is no exception to sovereign immunity in this case because the plaintiff failed to file a claim with the claims commissioner.
In opposition, the plaintiff asserts that because his amended complaint sounds in recklessness, sovereign immunity is avoided under § 4-165. That provision states that "[n]o state officer shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." General Statutes § 4-165. The plaintiff argues that the officials were not acting within the scope of their employment and, therefore, cannot claim immunity. In addition, the plaintiff argues that he does not have to seek permission from the claims commissioner because the exhaustion requirement set forth in General Statutes § 4-165 does not apply to acts that are "wanton, reckless or malicious."
The plaintiffs argument that because the allegations sound in recklessness, sovereign immunity is avoided under § 4-165 "confuses sovereign immunity with statutory immunity." Martin v. Brady,64 Conn. App. 433, 438, 780 A.2d 961, cert. granted, 258 Conn. 919,782 A.2d 1244 (2001); see also Shay v. Rossi, supra, 253 Conn. 162-64. The Supreme Court has stated that "where a state official is sued in both her official and individual capacities, if sovereign immunity does not apply to the claim against her in her official capacity, the statutory immunity may then apply to the claim against her in her individual capacity. Thus, before determining whether and to what extent the defendants are shielded by the statutory immunity provided by § 4-165, it is appropriate to determine whether the claims against them are barred by the common-law doctrine of sovereign immunity." Shay v. Rossi, supra,253 Conn. 162-63.
The doctrine of sovereign immunity is a "well settled principle that the sovereign [the state] is immune from suit unless the state, by appropriate legislation, consents to be sued." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody. N.E., Inc., supra,239 Conn. 101. The complaint in this case makes no allegation and the plaintiff makes no argument that any statute exists by which the state has waived its immunity from suit for the causes of action presently brought.
"[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state, is in effect, against the state. . . . It does not necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as CT Page 9846 to clothe the defendants with immunity from suit. . . . Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute." (Citations omitted; internal quotation marks omitted.) Shay v. Rossi, supra, 253 Conn. 168-69; see also Antinerella v. Rioux, 229 Conn. 479,487, 642 A.2d 699 (1994).
"In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiffs right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine . . . In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions. . . . Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Citations omitted; internal quotation marks omitted.) Shay v. Rossi, supra, 253 Conn. 169. "[I]n order to overcome sovereign immunity . . . plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they must also allege or otherwise establish facts that reasonably support those allegations." Id., 174.
Determining whether particular conduct is in excess of a state official's statutory authority is not an easy task. Our Supreme Court has recently observed that it "cannot, . . . at this stage of our jurisprudence, define with any degree of specificity where the line is. . . ." Id., 172. The Supreme Court decisions nevertheless provide some guidance. In Antinerella v. Rioux, supra, 229 Conn. 479, the court held that a high sheriff who tried to fire a deputy sheriff to further his own financial gain through a statutorily prohibited fee splitting agreement with various deputy sheriffs exceeded his authority and could not claim the protection of sovereign immunity. Id., 486. In Antinerella the court stated that when a "state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit." Id., 497.
A similar conclusion was reached in Shay v. Rossi, supra, 253 Conn. 134. The plaintiffs in Shay alleged that the department of children and families unjustifiably filed neglect and abuse petitions against them. The Supreme Court stated: "[T]he critical factual allegations in the plaintiffs complaint are that: (1) the neglect and abuse petitions were filed without probable cause and in the face of overwhelming evidence of the absence of abuse and neglect; (2) the defendants' refusal to withdraw the petitions and their insistence that [the plaintiff] Stephen Shay CT Page 9847 undergo in-home supervision and counseling were contrary to the evidence in the record and the advice of department staff; and (3) the defendants' conclusion that neglect and abuse of the Shay children had been confirmed was without foundation, unreasonable, arbitrary, wilful, wanton, reckless and malicious, and `designed to vindicate and legiti[mize] their handlingof the Shay case which was, from the outset, unlawful, uncaring, andunnecessary.' . . . These allegations, including the last allegation in particular, read broadly in the plaintiffs' favor, as they must be. charge the defendants with improper and self-serving motives in filing the neglect and abuse petitions, in pursuing them for as long as they did, and in pursuing the in-home supervision of the family for as long as they did. . . . In Antinerella v. Rioux, supra, 229 Conn. 497, we stated that when `the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit.' Similarly, if the defendants here acted solely in order to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted, there would be no reason to provide immunity from suit." (Citation omitted; emphasis in original.) Shay v. Rossi, supra, 253 Conn. 173-74.
The amended complaint in the present case, when read broadly in favor of the plaintiff, charges the defendants with demoting and blacklisting the plaintiff in retaliation for his refusal to cooperate with their attempts to fix the results of the investigation into the December 4, 1998, altercation and to place the blame on Parks despite the conclusion of the initial investigation that Aquino was to blame. According to the complaint, the defendants were motivated by their desire to find an excuse to discipline Parks. Although the defendants' motive is not as clear and well-defined as the motive in Shay, the allegations in the present case, when read broadly in favor of the plaintiff, are sufficient to support a conclusion that the defendants were acting solely to further an illegal or improper scheme of their own and not to carry out government policy. Consequently, the court will not conclude, based on the allegations of the complaint, that the defendants are entitled to the protection of sovereign immunity as a matter of law.
Having concluded that the defendants are not entitled to dismissal on the basis of sovereign immunity, the court must next determine whether the individual defendants, Egan and Connors, are entitled to the statutory immunity provided by § 4-165. See Shay v. Rossi, supra,253 Conn. 180. Section 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." The plaintiff argues that the defendants are not entitled to immunity under § 4-165 because the amended complaint alleges facts constituting wanton, reckless or malicious CT Page 9848 conduct by the defendants.
In Shay v. Rossi, supra, 253 Conn. 134, our Supreme Court held that meaning of the phrase "wanton, reckless or malicious" in § 4-165 is identical to the meaning of "wanton, reckless, wilful, intentional and malicious" conduct in the common-law context: "In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to other or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Id., 181.
As stated above, the amended complaint in the present case, when read broadly in favor of the plaintiff, charges the defendants with demoting and blacklisting the plaintiff in retaliation for his refusal to cooperate with their attempts to fix the results of the investigation into the December 4, 1998, altercation and to place the blame on Parks despite the conclusion of the initial investigation that Aquino was to blame. These facts, if proven, could support a conclusion that the defendants acted with a state of consciousness amounting to more than negligence and more than gross negligence. The deliberate acts alleged, if proven, could support a finding of reckless disregard of the just rights of the plaintiff. Based on the allegations of the amended complaint, therefore, the defendants are not entitled to immunity pursuant to § 4-165.
Because of the conclusion that the defendants are not immune from suit, there is no need to address the defendants' claim that immunity has not been waived by the claims commissioner. For all of the reasons stated above, the defendants' motion to dismiss is hereby denied.
D. Michael Hurley, Judge Trial Referee