VERDI VEJSELI ET AL. *v.* GANI PASHA ET AL.
(SC 17734)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 15—officially released May 29, 2007

*Alexandria L. Voccio*, for the appellants (defendant town of Watertown et al.).

*Charles T. Forman*, for the appellees (plaintiffs).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether a trial court's denial of a municipality's motion to dismiss based on governmental immunity is an appealable final judgment under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The defendants, the town of Watertown (town), and Richard Fusco and Joel Skilton, who are building officials employed by the town,[1] appeal, following our grant of certification,[2] from the judgment of the Appellate Court granting the motion of the plaintiffs, Verdi Vejseli and Anife Vejseli, to dismiss the defendants' appeal from the trial court's denial of their motion to dismiss the counts of the complaint pertaining to them. We conclude that the trial court's denial of the defendants' motion to dismiss based on

---

[1] Also named as defendants were Gani Pasha, who died during the pendency of this action, and Myzejen Pasha. The motion to dismiss did not address the counts of the complaint pertaining to the Pashas, and they are not parties to this appeal. Accordingly, for purposes of clarity and convenience, we refer to the town, Fusco and Skilton collectively as the defendants, and individually by name.

[2] We granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly dismiss the defendants' appeal?" *Vejseli* v. *Pasha*, 280 Conn. 917, 908 A.2d 542 (2006).

governmental immunity is not an appealable final judgment because a municipality's governmental immunity shields it from liability only, and not from suit. Accordingly, we affirm the judgment of the Appellate Court dismissing the defendants' appeal.

The record reveals the following facts, as alleged in the complaint and construed in the manner most favorable to the pleader, and procedural history. The named defendant, Gani Pasha, and the defendant Myzejen Pasha; see footnote 1 of this opinion; decided to build a single-family dwelling on a parcel of property located in the town, with the intent of selling that house to a third party as new construction. The Pashas, who were not licensed building contractors, obtained the necessary permits from the town by falsely representing that the house was to be constructed for their own use and occupancy. The Pashas then built the house without the services of any licensed builders or contractors. In January, 2001, the Pashas and the plaintiffs entered into a real estate contract for the sale of the newly constructed house.[3]

In June, 2001, the town, following inspections by Fusco and Skilton, issued a certificate of occupancy for the premises certifying that the house and the property were in substantial conformity with the relevant building codes and ordinances of both the town and the state. The house contained, however, numerous code violations, including lack of proper insulation, fire separation walls, structural supports and attic access, as well as improperly installed plumbing, exterior siding, interior doors, exterior doors, windows and framing.

After the Pashas and the plaintiffs closed the sale on the premises, the plaintiffs moved into the house, which

[3] The total contract price was $220,000, which was financed in part by a second purchase money note and mortgage, held by the Pashas, in the amount of $100,000.

thereafter sustained severe water damage when an interior plumbing pipe burst in February, 2002. A subsequent investigation revealed that the burst pipe had been caused by a complete lack of insulation in the area surrounding it.

Thereafter, the plaintiffs brought this action seeking damages and injunctive relief, alleging in counts nine, ten, eleven and twelve of a thirteen count complaint, that: (1) Fusco and Skilton, in their individual capacities, negligently had inspected the house and certified that the construction complied with the applicable building codes; (2) Fusco and Skilton, in their official capacities, recklessly had inspected the new house; (3) the town had issued the certificate of occupancy in reckless and wanton disregard of health and safety; and (4) the town had engaged in reckless and wanton disregard of health and safety with respect to the hiring, training and supervision of its employees.[4]

In their answer, the defendants posed numerous special defenses, including that the plaintiffs' claims were barred by the doctrine of governmental immunity under both the common law and General Statutes § 52-557n,[5]

---

[4] The plaintiffs also named the Pashas as defendants, and alleged against them in counts one through eight of the complaint, breach of contract, negligence, negligence per se, recklessness, and violations of the New Home Warranties Act, General Statutes § 47-116 et seq., and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. In count thirteen of their complaint, the plaintiffs also sought rescission or reformation of the promissory note and mortgage held by the Pashas.

[5] General Statutes § 52-557n provides: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for

## specifically subsection (b) (7) and (8). After the trial

damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision; or (10) conditions on land sold or transferred to the political subdivision by the state when such conditions existed at the time the land was sold or transferred to the political subdivision.

"(c) Any person who serves as a member of any board, commission, committee or agency of a municipality and who is not compensated for such membership on a salary or prorated equivalent basis, shall not be personally liable for damage or injury occurring on or after October 1, 1992, resulting from any act, error or omission made in the exercise of such

court granted the defendants' motion for summary judgment with respect to count nine of the complaint, the defendants moved to dismiss the remaining counts against the town and Fusco and Skilton in their official capacities. The defendants claimed that: (1) the town is immune from liability as to the recklessness claim both at common law and under § 52-557n; (2) Fusco and Skilton similarly are immune because a suit against a municipal employee in his official capacity amounts to a suit against the municipality itself; and (3) § 52-557n (b) does not create a private cause of action. The trial court denied the defendants' motion to dismiss, concluding that the "town has used the wrong vehicle to attack [these] counts of the complaint . . . [because] [g]overnmental immunity does not implicate subject matter jurisdiction."[6]

The defendants appealed from the denial of their motion to dismiss to the Appellate Court. The plaintiffs

person's policy or decision-making responsibilities on such board, commission, committee or agency if such person was acting in good faith, and within the scope of such person's official functions and duties, and was not acting in violation of any state, municipal or professional code of ethics regulating the conduct of such person, or in violation of subsection (a) of section 9-369b or subsection (b) or (c) of section 1-206. The provisions of this subsection shall not apply if such damage or injury was caused by the reckless, wilful or wanton misconduct of such person."

[6] After the trial court concluded that a motion to dismiss was not the appropriate procedural vehicle to raise the defense of governmental immunity, that court relied on *DeConti* v. *McGlone*, 88 Conn. App. 270, 272, 869 A.2d 271, cert. denied, 273 Conn. 940, 875 A.2d 42 (2005), and *Doe* v. *Board of Education*, 76 Conn. App. 296, 299 n.6, 819 A.2d 289 (2003), to emphasize that "[g]overnmental immunity [must be raised] as a special defense. [It] is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded [under Practice Book § 10-50]. . . . However, where it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion to strike." (Citations omitted; internal quotation marks omitted.) See also, e.g., *Violano* v. *Fernandez*, 280 Conn. 310, 321–22, 907 A.2d 1188 (2006); *Westport Taxi Service* v. *Westport Transit District*, 235 Conn. 1, 24, 664 A.2d 719 (1995).

moved to dismiss the appeal for lack of appellate subject matter jurisdiction, claiming that the trial court's denial of the motion to dismiss based on governmental immunity did not constitute an appealable final judgment. The Appellate Court granted that motion and dismissed the defendants' appeal for lack of a final judgment. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the defendants claim that, under *State* v. *Curcio*, supra, 191 Conn. 31, the denial of a municipality's motion to dismiss based on governmental immunity is, although an interlocutory ruling, nevertheless an appealable final judgment. The defendants rely on *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 327, 828 A.2d 549 (2003), in which we concluded that the denial of the state's motion to dismiss based on sovereign immunity was an appealable final judgment under the second prong of the *Curcio* test because sovereign immunity protects the state both from suit, or having to litigate claims at all, and from liability. The defendants contend that the *Shay* final judgment exception should be extended to denials of municipalities' motions to dismiss based on governmental immunity because, inter alia, our recent decision in *Pane* v. *Danbury*, 267 Conn. 669, 677–78, 841 A.2d 684 (2004), establishes that, like the state, municipalities are immune from suit, as well as from liability, in the absence of a statute authorizing an action against municipalities. The defendants also argue that requiring a municipality to defend against a lawsuit in the absence of a statute authorizing such a suit raises the same policy concerns that are implicated by the state's sovereign immunity.

In response, the plaintiffs claim that we should not extend the *Shay* final judgment exception because sovereign and governmental immunities are separate and

distinct concepts. The plaintiffs argue that governmental immunity under the common law and § 52-557n provides municipalities with limited protection from liability only, and not from suit. The plaintiffs contend, therefore, that the rationale of *Shay*, namely, that the state would lose the benefit of its immunity from suit if it were forced to defend against an action without the availability of immediate review of an interlocutory order denying its motion to dismiss, does not apply in the context of municipalities' governmental immunity. We agree with the plaintiffs, and conclude that the denial of a municipality's motion to dismiss or to strike based on governmental immunity; see footnote 6 of this opinion; is not an appealable final judgment under the second prong of *Curcio*.

"As a general rule, an interlocutory ruling may not be appealed pending the final disposition of a case. . . . We previously have determined [however] that certain interlocutory orders have the attributes of a final judgment and consequently are appealable under [General Statutes] § 52-263.[7] . . . In *State* v. *Curcio*, [supra, 191 Conn. 31], we explicated two situations in which a party can appeal an otherwise interlocutory order: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . .

---

[7] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that the defendant will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Citations omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital,* 272 Conn. 776, 784–86, 865 A.2d 1163 (2005).

In *Shay* v. *Rossi,* supra, 253 Conn. 165–67, we concluded that "[t]he nature of sovereign immunity is such a right. It protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable. Therefore, unless the state is permitted to appeal a trial court's denial of its motion to dismiss, filed on the basis of a colorable claim of sovereign immunity, the state's right not to be required to litigate the claim filed against it would be irretrievably lost.

"We have in the past phrased the underlying rationale of the doctrine of sovereign immunity in theoretical terms. For example, in *Horton* v. *Meskill,* 172 Conn. 615, 623–24, 376 A.2d 359 (1977), we noted, as Mr. Justice Holmes wrote: A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. . . . The modern rationale for the doctrine, however, rests on the more practical ground that the subjection of the state and federal governments to private litigation might consti-

tute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. . . . This rationale suggests that the doctrine protects the state from unconsented to litigation, as well as unconsented to liability.

"Although we have never explicitly delineated this particular aspect of the doctrine in final judgment terms, our sovereign immunity cases implicitly have recognized that the doctrine protects against suit as well as liability—in effect, against having to litigate at all. In *Bergner* v. *State*, 144 Conn. 282, 286, 130 A.2d 293 (1957), we recognized the distinction between immunity from suit and from liability,[8] and held that a statutory waiver of sovereign immunity constituted a waiver of suit and provided a remedy to enforce such liability as the general law recognizes. . . . [T]he state's waiver of its immunity from liability only arises after a prior determination that it has waived its immunity from suit, and that a waiver of immunity from suit does not necessarily imply a waiver of immunity from all aspects of liability.

"Thus . . . the state's sovereign immunity right not to be required to litigate at all, as opposed to its right not to be ultimately subjected to liability, is analogous

---

[8] As we recently explained, in *Bergner* v. *State*, supra, 144 Conn. 287, this court concluded that "a statute that explicitly waived immunity from suit should be construed as implicitly waiving immunity from liability, because, otherwise, the waiver of suit would be meaningless." *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 79, 818 A.2d 758 (2003), superseded by statute on other grounds, Public Acts 2003, No. 03-97, § 2. We noted the conceptual "distinction between sovereign immunity from suit and sovereign immunity from liability. Legislative waiver of a state's suit immunity merely establishes a remedy by which a claimant may enforce a valid claim against the state and subjects the state to the jurisdiction of the court. By waiving its immunity from liability, however, the state concedes responsibility for wrongs attributable to it and accepts liability in favor of a claimant." (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, supra, 79.

to that facet of the criminal defendant's constitutional double jeopardy right not to be tried twice for the same offense. Because that constitutional right includes the right not even to be tried for the same offense, the denial of a motion to dismiss criminal charges, filed on the basis of a colorable claim of double jeopardy, is an immediately appealable final judgment under the second prong of *Curcio*. . . . Similarly, therefore, in a civil case the denial of a motion to dismiss, filed on the basis of a colorable claim of sovereign immunity, must be regarded under *Curcio* as an immediately appealable final judgment."[9] (Citations omitted; internal quotation marks omitted.) See also *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 122, 891 A.2d 106 (2006) ("The aspect of sovereign immunity that protects the state from suit, however, is rendered meaningless if the issue is not fully resolved prior to trial. Indeed, the state sacrifices some of that protection even if the issue is resolved after discovery has commenced because the state is still forced to invest the resources necessary to defend the suit.").[10]

[9] In *Shay*, we overruled *State* v. *Malkowski*, 189 Conn. 101, 105–106, 454 A.2d 275 (1983), wherein "we held that the denial of the state's plea in abatement, filed on the ground of sovereign immunity, was not a final judgment for purposes of appeal . . . [because] [t]hat case . . . was decided before our refinement of our final judgment jurisprudence in *Curcio*, and without full appreciation of the analogy between sovereign immunity as a defense to a civil claim, and double jeopardy as a defense to a criminal complaint." (Citation omitted; internal quotation marks omitted.) *Shay* v. *Rossi*, supra, 253 Conn. 167.

[10] We recently followed *Shay* in concluding that a trial court's interlocutory denial of a motion for summary judgment "predicated upon a colorable claim of absolute immunity" afforded participants in judicial and quasi-judicial proceedings is an appealable final judgment under the second prong of *Curcio*. *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 785. We concluded that the availability of an immediate appeal was necessary because "absolute immunity [from suit] furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings . . . [which] would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." Id., 787.

Against this background regarding the conceptual importance of immunity from suit in the context of appealability, we now must determine whether a municipality's governmental immunity extends to suit as well as to liability. We begin by noting that, whereas "[t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss"; (internal quotation marks omitted) *Cox* v. *Aiken*, 278 Conn. 204, 211, 897 A.2d 71 (2006); the doctrine of governmental immunity implicates no such interest. Thus, " '[t]his court has previously stated that [a] municipality itself was *generally immune from liability* for its tortious acts at common law . . . . We have also recognized, however, that governmental immunity may be abrogated by statute.' . . . [Section] 52-557n (a) (1) provides in relevant part: 'Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . .' We previously have concluded that '[t]his language clearly and expressly *abrogates the traditional common-law doctrine in this state that municipalities are immune from suit* for torts committed by their employees and agents.' " (Citation omitted; emphasis added.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 47–48, 881 A.2d 194 (2005), quoting *Spears* v. *Garcia*, 263 Conn. 22, 28–29, 818 A.2d 37 (2003). Indeed, we expressly have recognized that, "[u]nlike the state, municipalities have no sovereign immunity from suit. . . . Rather, municipal governments have a limited immunity from liability." (Citation omitted; internal quotation marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 26, 664 A.2d 719 (1995); see also *Cone* v. *Waterford*, 158 Conn. 276, 278, 259 A.2d 615 (1969) (same).

Similarly, we have noted that, as between state and municipal employees, "differences in treatment already exist because of inherent differences in the nature of the governmental immunity enjoyed by municipalities as contrasted with the sovereign immunity enjoyed by the state. Governmental immunity, which applies to municipalities, is different in historical origin, scope and application from the sovereign immunity enjoyed by the state. A suit against a municipality is not a suit against a sovereign. *Towns have no sovereign immunity, and are capable of suing and being sued . . . in any action. . . . Municipalities do, in certain circumstances, have a governmental immunity from liability. . . . But that is entirely different from the state's sovereign immunity from suit . . . .*" (Emphasis added; internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 87, 818 A.2d 758 (2003); id. (relying on distinction to explain why municipal police officer could file civil action to seek indemnification under General Statutes [Rev. to 1999] § 53-39a, while state trooper's recourse was to claims commissioner because of state's sovereign immunity from suit), superseded by statute, Public Acts 2003, No. 03-97, § 2. Accordingly, we conclude that municipalities are immune from liability only, and not from suit.[11]

---

[11] In support of their claim that governmental immunity includes immunity from suit, the defendants rely on *Pane* v. *Danbury*, supra, 267 Conn. 677, wherein we concluded, inter alia, that the plaintiff could not bring an invasion of privacy action against her city employer, because "[t]he plaintiff ha[d] not cited any statute abrogating governmental immunity to the tort of invasion of privacy." The defendants in the present case specifically rely on our statement in *Pane* v. *Danbury*, supra, 678, that "count one did not state a cause of action and, even if it did, the plaintiff has not cited any statute *allowing her to sue the city* for invasion of privacy." (Emphasis added.) *Pane* is inapposite because it did not address specifically the distinction between immunity from suit and immunity from liability with respect to municipalities. Moreover, the defendants read this language out of context, as the language immediately preceding it quotes *Spears* v. *Garcia*, supra, 263 Conn. 28, for the proposition that "[t]his court has previously stated that [a] *municipality itself was generally immune from liability* for its tortious acts at common law. . . . We have also recognized, however, that governmental

Because municipalities are immune from liability, but not from suit, the concerns that justify the availability of an immediate appeal from the denial of a motion to dismiss based on sovereign immunity are not implicated in the context of governmental immunity. Put differently, municipalities have no immunity from suit that potentially might be rendered meaningless without the opportunity for immediate appellate review before being forced to defend, even successfully, a case at trial. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 785–86. Accordingly, we conclude that the Appellate Court properly dismissed the defen-

immunity may be abrogated by statute. . . . Thus, the general rule developed in our case law is that *a municipality is immune from liability* for [its tortious acts] unless the legislature has enacted a statute abrogating that immunity." (Emphasis added; internal quotation marks omitted.) *Pane* v. *Danbury*, supra, 677.

We similarly disagree with the defendants' reliance on language in certain Appellate Court decisions stating that: "It is well established that *the state or a city is immune from suit* unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases. See *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972). Thus, in a case where a government is the defendant, courts do not have subject matter jurisdiction unless such jurisdiction is statutorily conferred. The legislature, however, has carved out certain statutory exceptions to the general rule of sovereign immunity and allowed governmental entities to be sued under certain limited circumstances. *Berger, Lehman Associates, Inc.* v. *State*, 178 Conn. 352, 356, 422 A.2d 268 (1979) . . . ." (Emphasis added; internal quotation marks omitted.) *Witczak* v. *Gerald*, 69 Conn. App. 106, 110–11, 793 A.2d 1193 (2002), quoting *Brennan* v. *Fairfield*, 58 Conn. App. 191, 195, 753 A.2d 396 (2000), rev'd on other grounds, 255 Conn. 693, 768 A.2d 433 (2001); see *Novicki* v. *New Haven*, 47 Conn. App. 734, 738, 709 A.2d 2 (1998) (same); see also *Mazurek* v. *East Haven*, 99 Conn. App. 795, 797, 916 A.2d 90 (citing state highway defect case in support of proposition that "doctrine of governmental immunity . . . implicates subject matter jurisdiction and therefore must be determined in favor of the plaintiff before any of the issues in the appeal can be addressed"), cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007). Although this language undoubtedly appears helpful to the defendants' case, it also is the product of the Appellate Court's misreading of *Baker* v. *Ives*, supra, 298, which was a case involving the *state* highway defect statute, General Statutes § 13a-144, and not governmental immunity as it pertains to municipalities.

dants' appeal because the denial of a motion to dismiss or to strike based on governmental immunity is not an appealable final judgment under the second prong of *Curcio*.[12]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[12] The defendants also raise numerous arguments with respect to the merits of the plaintiffs' claims, specifically that: (1) § 52-557n (b) (7) does not create a private cause of action for recklessness against a municipality; (2) under § 52-557n (a) (2) (A), the town is immune from liability for damages caused by the reckless acts of Fusco and Skilton; and (3) the claims against Fusco and Skilton in their official capacities are, in reality, claims against the town itself. The trial court did not address the merits of these claims because it considered the motion to dismiss to be an improper procedural vehicle for raising them. In light of our conclusion as to the appealability of that order, we decline to consider these claims as well.

We briefly address, however, the defendants' other claim, raised for the first time on appeal to this court, that the relevant counts of the complaint should be dismissed because, by enforcing the state building code, General Statutes § 29-260 et seq., the town and its employees were acting as agents of the state and were, therefore, entitled to sovereign immunity. See, e.g., *Cahill* v. *Board of Education*, 187 Conn. 94, 101–102, 444 A.2d 907 (1982) (municipal boards of education are "agents of the state responsible for education in the towns" entitled to sovereign immunity if board's "action would operate to control the activities of the state or subject it to liability"); *R.A. Civitello Co.* v. *New Haven*, 6 Conn. App. 212, 218, 504 A.2d 542 (1986) (agency theory applies to "city itself" in addition to its board of education). The defendants' failure to raise this claim before the trial court ordinarily would not preclude appellate review of this issue because colorable claims of sovereign immunity implicate the courts' subject matter jurisdiction and may be raised at any time, including during a certified appeal to this court. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 393 and n.18, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). Having concluded, however, that appellate jurisdiction is lacking over this case in its entirety for lack of a final judgment, we do not have jurisdiction to reach the merits of the defendants' sovereign immunity claim, and leave the defendants, in accordance with their intention expressed at oral argument before this court, to raise that issue properly before the trial court in the first instance.