STATE OF CONNECTICUT *v.* FRANK M. JENKINS
(SC 18018)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued February 15—officially released September 2, 2008

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom were *Melanie Cradle*, assistant state's attorney, and, on the brief, *Kevin D. Lawlor*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. After the defendant, Frank M. Jenkins, was arrested and charged with various offenses, the trial court determined that he was not competent to stand trial and ordered him to be placed as an inpatient at a mental health facility for treatment pursuant to General Statutes § 54-56d (i)[1] for three nonconsecutive periods totaling twenty-one months. Thereafter, the defendant claimed that, because the placement periods cumulatively had exceeded eighteen months, the trial court was required, under General Statutes (Rev. to 2005) § 54-56d (m),[2] to conduct a hearing to determine

[1] General Statutes § 54-56d (i) provides in relevant part: "The placement for treatment for the purpose of rendering the defendant competent shall comply with the following conditions: (1) The period of placement under the order or combination of orders shall not exceed the period of the maximum sentence which the defendant could receive on conviction of the charges against the defendant or eighteen months, whichever is less . . . ."

[2] General Statutes (Rev. to 2005) § 54-56d (m) provides in relevant part: "If at any time the court determines that there is not a substantial probability that the defendant will attain competency within the period of treatment allowed by this section, or if at the end of such period the court finds that the defendant is still not competent, the court shall either release the defendant from custody or order the defendant placed in the custody of the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Mental Retardation. The commissioner given custody, or the commissioner's designee, shall then apply for civil commitment according to sections 17a-75 to 17a-83, inclusive, 17a-270 to 17a-282, inclusive, and 17a-495 to 17a-528, inclusive. The court shall hear arguments as to whether the defendant should be released or should be placed in the custody of the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Mental Retardation. . . ."

We use the revision of 2005 because that version of § 54-56d (m) was in effect when the trial court, *B. Fischer, J.*, rejected the defendant's claim

whether he should be released from treatment or civilly committed. The trial court rejected the defendant's claim, concluding that none of the defendant's individual placements for treatment had exceeded eighteen months. The defendant then brought this appeal,[3] claiming that placements for treatment must be treated cumulatively for purposes of applying the eighteen month time limitation of § 54-56d (i). We agree with the defendant's construction of § 54-56d (i). Accordingly, we reverse the trial court's decision and remand the case for a determination of the relief to which the defendant is entitled.[4]

The record reveals the following undisputed facts and procedural history. The defendant was arrested in

that he was entitled to a hearing to determine whether he should be released from treatment or civilly committed. Section 54-56d (m) has since been amended. See Public Acts 2006, No. 06-36, § 1; Public Acts 2007, No. 07-73, § 2, and No. 07-153, § 1. All references in this opinion to § 54-56d (m) are to the 2005 revision.

[3] The defendant appealed from the trial court's decision to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] We note that the defendant's claim was styled as a motion to dismiss the information. On appeal, however, the defendant contends that, in his motion, he sought a hearing to determine whether he should be released from treatment or civilly committed. He appears to have disavowed any claim that he is entitled to a dismissal of the charges against him. In addition, the defendant asserts that the "various motions and memoranda [that he had filed in the trial court], the state's opposing motions, and, most importantly, the trial court's memorandum of decision show that the parties and [the] court understood and addressed the defendant's substantive argument that [he] had been found incompetent and placed in inpatient treatment in excess of the eighteen month statutory maximum period of commitment set forth in [§ 54-56d (i)] and thus sought [his] release under [§ 54-56d (m)]." On appeal, the state does not take issue with the defendant's contention regarding the thrust of the motion. Accordingly, we treat the motion as an application for release or for a hearing pursuant to § 54-56d (m), and conclude that the trial court improperly denied the defendant's request for release or a hearing on the ground that the eighteen month limitation period of § 54-56d (i) has not been exceeded. In light of the defendant's apparent acknowledgment that he never sought dismissal of the charges, and because, consistent with that position, the defendant has not briefed that claim on appeal, we treat it as abandoned for purposes of this appeal.

November, 2002, and initially was charged with sexual assault in the first degree in violation of General Statutes § 53a-70, unlawful restraint in the second degree in violation of General Statutes § 53a-96, and risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21, as amended by Public Acts 2002, No. 02-138, § 4. On December 11, 2002, the trial court, *Holden, J.*, determined that the defendant was not competent to stand trial, but was restorable to competency, and, pursuant to § 54-56d (i), ordered him to be placed for inpatient treatment at a mental health facility. The defendant remained in treatment for a period of eight months, from December 11, 2002, through August 15, 2003, at which time the trial court, *Ronan, J.*, determined that he had regained competency.[5] Thereafter, on April 28, 2004, the trial court, *Carroll, J.*, determined that the defendant again had become incompetent to stand trial, and he again was placed for treatment for a period of eight months, from April 28 through December 21, 2004.[6] On December 21, 2004, the trial court, *Carroll, J.*, determined that the defendant again had regained competency. Thereafter, the trial court, *Carroll, J.*, determined for a third time that the defendant was incompetent, and he again was placed for treatment for a period of five months, from August 23, 2005, through January 17, 2006.[7] On January 17, 2006, the trial

[5] During this period, the trial court, *Ronan, J.*, held hearings pursuant to General Statutes (Rev. to 2003) § 54-56d (k) on February 13, 2003, and on May 15, 2003, for the purpose of reconsidering the defendant's competency. See General Statutes (Rev. to 2003) § 54-56d (k) (1) ("[w]hen any placement order for treatment is rendered or continued, the court shall set a date for a hearing, to be held within ninety days, for reconsideration of the issue of the defendant's competency"). After each such hearing, the court determined that the defendant's competency had not been restored.

[6] During this period, the trial court, *Carroll, J.*, held hearings on May 26, August 11, and October 26, 2004, to reconsider the defendant's competency, and determined that his competency had not been restored.

[7] During this period, the trial court, *B. Fischer, J.*, held hearings on October 21, 2005, and December 8, 2005, to reconsider the defendant's competency and determined that his competency had not been restored.

court, *B. Fischer, J.*,[8] determined that the defendant had regained competency. Thereafter, the trial court ordered that the defendant attend weekly competency maintenance sessions.

On April 17, 2006, the state filed a substitute information charging the defendant with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), sexual assault in the first degree and risk of injury to a child. Two days later, the defendant filed a motion to dismiss the substitute information. See footnote 4 of this opinion. In that motion, the defendant claimed, inter alia, that, because his placements for treatment under § 54-56d (i) cumulatively had exceeded the statute's eighteen month limitation period, the trial court must either release him from custody or place him in the custody of the commissioner of mental health and addiction services, the commissioner of children and families or the commissioner of mental retardation (now the commissioner of developmental services) for civil commitment proceedings. See General Statutes (Rev. to 2005) § 54-56d (m). After conducting a hearing on the defendant's motion, the trial court concluded that the eighteen month limitation period "is provided to restore the defendant to competence. In the present case, the defendant was restored to competence on *three* separate dates well within the eighteen month statutory period. . . . Only if a defendant can no longer be restored to competence within the eighteen month time limitation does the court proceed to [§ 54-56d (m)], which requires the release or placement of the defendant." (Emphasis in original.) Because none of the defendant's individual treatment periods restoring him to competency had exceeded eighteen months, the trial court denied his request for a release from custody or a hearing pursuant to § 54-56d (m).[9]

[8] Hereinafter, all references to the trial court are to the court, *B. Fischer, J.*

[9] While the defendant's motion was pending, the trial court again determined that the defendant was incompetent and ordered an assessment

This appeal followed. The defendant claims that the trial court improperly determined that the eighteen month limitation period set forth in § 54-56d (i) was not exceeded in this case because none of the defendant's individual placement periods had exceeded eighteen consecutive months. He claims that multiple placements for treatment must be treated cumulatively under the statute. We agree.

Before addressing the merits of the defendant's claim, we first must determine whether the trial court's decision was an appealable final judgment. "It is well established that the subject matter jurisdiction of the Appellate Court and of this court is governed by [General Statutes] § 52-263,[10] which provides that an *aggrieved party* may appeal to the court having jurisdiction from the *final judgment* of the court." (Emphasis in original; internal quotation marks omitted.) *King* v. *Sultar*, 253 Conn. 429, 434, 754 A.2d 782 (2000). "In a criminal proceeding, there is no final judgment until the imposition of a sentence." (Internal quotation marks omitted.)

---

for outpatient restoration. The department of mental health and addiction services submitted an outpatient restoration plan for the defendant on June 20, 2006, which the trial court accepted. Since that time, the trial court repeatedly has determined that the defendant is not competent to stand trial, and the defendant has been in continuous placement for treatment. The state claims, and the defendant does not dispute, that this extended period of placement does not violate the eighteen month limitation period set forth in § 54-56d (i) because the limitation period was tolled by the filing of this appeal in December, 2006. See *State* v. *Garcia*, 233 Conn. 44, 92–93, 658 A.2d 947 (1995), overruled in part on other grounds by *State* v. *Jacobs*, 265 Conn. 396, 828 A.2d 587 (2003).

[10] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict . . . ."

*State* v. *Garcia*, 233 Conn. 44, 63, 658 A.2d 947 (1995), overruled in part on other grounds by *State* v. *Jacobs*, 265 Conn. 396, 828 A.2d 587 (2003). "We previously have determined [however] that certain interlocutory orders have the attributes of a final judgment and consequently are appealable under . . . § 52-263. . . . In *State* v. *Curcio*, [191 Conn. 27, 31, 463 A.2d 566 (1983)], we explicated two situations in which a party can appeal an otherwise interlocutory order: (1) [when] the order or action terminates a separate and distinct proceeding, or (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . .

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that the defendant will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Internal quotation marks omitted.) *Vejseli* v. *Pasha*, 282 Conn. 561, 568–69, 923 A.2d 688 (2007).

In *Jackson* v. *Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972), the United States Supreme Court held that, under the due process clause of the fourteenth amendment to the federal constitution, "a person charged by a [s]tate with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined

that this is not the case, then the [s]tate must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." Id., 738. Section 54-56d codifies this aspect of the constitutional right to due process. See *State* v. *Garcia*, 235 Conn. 671, 674, 669 A.2d 573 (1996). We conclude, therefore, that the defendant's claim that the eighteen month limitation period of § 54-56d (i) has been exceeded and that he is entitled either to immediate release or to civil commitment proceedings implicates a constitutional right, embodied in § 54-56d, already secured to him. Moreover, if the trial court's decision is erroneous, "that right will be irretrievably lost and the [defendant will be] irreparably harmed unless [he] may immediately appeal." (Internal quotation marks omitted.) *Vejseli* v. *Pasha*, supra, 282 Conn. 569; see also *United States* v. *Gold*, 790 F.2d 235, 238–39 (2d Cir. 1986) (trial court's order committing defendant to restore his competency to stand trial implicates liberty interest that would be lost if order were not subject to immediate appellate review); *State* v. *Garcia*, supra, 233 Conn. 66 (trial court's order requiring that defendant be medicated involuntarily for purpose of restoring his competency to stand trial implicates liberty interest protected by due process clause and may be appealed immediately under second prong of *Curcio*). Accordingly, we conclude that the trial court's decision is subject to appellate review under the second prong of *Curcio*.

We turn, therefore, to the merits of the defendant's claim. Whether the eighteen month limitation period set forth in § 54-56d (i) refers to the cumulative total of all of the defendant's placements for treatment or, instead, refers to each individual placement is a question of statutory interpretation over which our review is plenary. See, e.g., *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 294, 933 A.2d 256 (2007).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 294–95.

We begin our analysis with the language of the statute. General Statutes § 54-56d (i) provides in relevant part: "(1) The period of placement under the order or combination of orders shall not exceed the period of the maximum sentence which the defendant could receive on conviction of the charges against the defendant or eighteen months, whichever is less . . . ." The defendant contends that, because the phrase "period of placement" is followed by the phrase "under the order *or combination of orders*"; (emphasis added) General Statutes § 54-56d (i); it clearly refers to the cumulative total of all of the placement orders issued by the trial court. The state contends, however, that if a defendant has been found incompetent and placed for treatment pursuant to § 54-56d (i), § 54-56d (k)[11]

[11] General Statutes § 54-56d (k) (1) provides in relevant part: "When any placement order for treatment is rendered or continued, the court shall set

requires the trial court to reconsider the defendant's competency every ninety days and to discontinue, continue or modify the original placement order at that time. Accordingly, the state argues that the phrase "combination of orders" reasonably may be interpreted to refer to the orders issued after each mandatory reconsideration during a single placement period, and not to the orders for placement issued upon distinct determinations of incompetence. We conclude that the phrase "period of placement" is ambiguous as to whether it means the cumulative total of all of the defendant's placements or each individual period of placement.[12] Accordingly, we may consider the statute's legislative history, the circumstances surrounding its enactment and the legislative policy that it was designed to implement in determining the meaning of that phrase.

As we have indicated, the United States Supreme Court has held, under the due process clause of the fourteenth amendment, that a defendant who is incompetent to stand trial cannot be held for a longer time than is reasonably necessary to determine whether a substantial probability exists that he will attain competency in the foreseeable future. *Jackson* v. *Indiana*,

a date for a hearing, to be held within ninety days, for reconsideration of the issue of the defendant's competency. . . . If the court finds that the defendant is competent, the defendant shall be returned to the custody of the Commissioner of Correction or released, if the defendant has met the conditions for release, and the court shall continue with the criminal proceedings. If the court finds that the defendant is still not competent but that the defendant is making progress toward attaining competency, the court may continue or modify the placement order. . . ."

Although § 54-56d (k) (1) was amended in 2007; see Public Acts 2007, No. 07-71, § 1; that amendment was technical in nature and has no bearing on the merits of this appeal. We therefore refer to the current revision of that statutory provision.

[12] Although the defendant suggests that the language of § 54-56d (i) plainly and unambiguously supports his construction of that statutory provision, he ultimately acknowledges that the provision, "when read in context, is susceptible to more than one reasonable interpretation . . . and therefore [is] ambiguous."

supra, 406 U.S. 738. If such a probability cannot be established, then the state must either initiate civil commitment proceedings or release the defendant. Id. "[I]f it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." Id. These constitutional requirements are predicated on the concern that the procedures for pretrial placement of an incompetent defendant for treatment are substantially different from, and provide fewer protections than, the procedures for civil commitment.[13] See id., 727. Compare General Statutes § 54-56d with General Statutes §§ 17a-75 through 17a-83 (procedures for commitment of mentally ill children), General Statutes (Rev. to 2007 and Sup. 2008) §§ 17a-274 through 17a-277, and 17a-282 (procedures for involuntary placement with department of developmental services, formerly department of mental retardation), and General Statutes §§ 17a-495 through 17a-528 (procedures for commitment of person with psychiatric disabilities). The court in *Jackson* also expressed concern that committing an incompetent defendant for an indefinite period could violate the sixth amendment right to a speedy trial. See *Jackson* v. *Indiana*, supra, 740. Section 54-56d (i) was enacted to address these constitutional concerns. See *State* v. *Garcia*, supra, 235 Conn. 674; see also 20 S. Proc., Pt. 7, 1977 Sess., p. 2926, remarks of Senator Salvatore C. DePiano (proposed legislation now codified at § 54-56d [i] "was motivated by the United States Supreme Court decision [in *Jackson*] and in order to put Connecticut

[13] The court in *Jackson* noted that the defendant in that case had not been "afforded any formal commitment proceedings addressed to [his] ability to function in society, or to society's interest in his restraint, or to the [s]tate's ability to aid him in attaining competency through custodial care or compulsory treatment, the ostensible purpose of the commitment." (Internal quotation marks omitted.) *Jackson* v. *Indiana*, supra, 406 U.S. 738. The state makes no claim in the present case that the pretrial placement procedures set forth in § 54-56d represent an adequate substitute for civil commitment proceedings.

in line with that decision"); 20 H.R. Proc., Pt. 8, 1977 Sess., p. 3105, remarks of Representative Ernest N. Abate (explaining that predecessor to § 54-56d [i], providing that incompetent defendant could be placed for treatment for longer of eighteen months or period of maximum sentence that defendant could receive, was unconstitutional under *Jackson*).

Under the trial court's interpretation of § 54-56d (i), if an incompetent defendant is restored to competency after being placed for treatment but becomes incompetent again when treatment is discontinued, he may be subject to an unlimited number of placements that individually last less than eighteen months but that cumulatively exceed both the statute's eighteen month limitation period and the maximum sentence that the defendant could receive. The trial court apparently agreed, as the state contends, that the court's concerns in *Jackson* about indefinite placement for treatment were not implicated in the present case because all of the defendant's individual placements for treatment were temporary.

The court in *Jackson*, however, was not concerned primarily with the duration of individual periods of pretrial placement for treatment. Rather, the case most reasonably can be understood as addressing the constitutional concerns raised by an extended delay between the initial determination of incompetence and either (1) the restoration of a defendant's competency actually to stand trial, or (2) the release of, or institution of civil commitment proceedings against, a defendant who cannot be restored to competency. See *Jackson* v. *Indiana*, supra, 406 U.S. 738 (state must determine within "reasonable period of time" after determination of incompetence whether there is substantial probability that incompetent defendant can be restored to competency "in the foreseeable future"); see also id. (to commit incompetent defendant who can be restored to

competency, state must determine that "the defendant probably *soon* will be able to stand trial" [emphasis added]). To allay its concerns about indefinite pretrial placement for treatment, the court in *Jackson* imposed two time requirements on the government. First, the government must determine within a "reasonable period of time" after the initial determination of incompetence whether there is a substantial probability that the defendant can be restored to competency.[14] Id. If there is not, then the defendant is entitled to immediate release or to the institution of commitment proceedings. Id. Second, if a defendant is restorable, he must be able to stand trial "in the foreseeable future" or "soon" after the determination of restorability is made. Id. Thus, if a defendant is not able actually to stand trial "soon" after the court makes its initial determination that he is restorable, he must be treated as nonrestorable and either must be released or afforded civil commitment proceedings. See id. Nothing in *Jackson* suggests that the government constitutionally may subject a defendant to multiple pretrial placements for treatment over an indefinite period, as long as each period of placement is less than eighteen months and the defendant is briefly restored to competency between each finding of incompetence, and we cannot conceive why that would be the case.[15]

---

[14] This timing requirement is set forth in General Statutes § 54-56d (e), which provides in relevant part that "[t]he court shall hold a hearing as to the competency of the defendant no later than ten days after the court receives the written report" on the defendant's competency in accordance with § 54-56d (d), and in General Statutes § 54-56d (f), which provides in relevant part that, "[i]f the court finds that the defendant is not competent, the court shall also find whether there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order permitted under this section."

[15] In support of its claim to the contrary, the state notes that the court in *Jackson* stated that, "[w]ere the [s]tate's factual premise that [the defendant's] commitment is only *temporary* a valid one, this might well be a different case." (Emphasis added.) *Jackson* v. *Indiana*, supra, 406 U.S. 725. The court merely was making the point, however, that if the government

It is clear, on the basis of the foregoing background, that, when the legislature amended what is now § 54-56d in response to *Jackson*,[16] it was attempting to ensure that incompetent defendants would stand trial, be released or be subject to civil commitment proceedings "within the foreseeable future" or "soon" after the initial determination of incompetence. Id. Thus, the statute most reasonably can be understood as providing that, after a defendant has been found incompetent to stand trial but restorable to competency, the cumulative total of the defendant's placements for treatment cannot exceed the period of the maximum sentence that the defendant could receive or eighteen months, whichever is less. In light of the principles articulated in *Jackson*,

had established that the defendant's pretrial commitment would be for a relatively short time, instead of permanent; id., 727 (because record established that defendant in *Jackson* could not be restored to competency, defendant's "commitment [was] permanent in practical effect"); the commitment might have been constitutional. That does not mean that subjecting a defendant to an indefinite number of temporary pretrial placement periods over an extended period of time also would be constitutional.

Relying on *Jones* v. *United States*, 463 U.S. 354, 368–69, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983), the state also contends that interpreting § 54-56d (i) to authorize a cumulative placement period that exceeds the period of the maximum sentence does not lead to an untenable result because placement in a mental health facility does not constitute punishment for a crime. In *Jones*, the United States Supreme Court determined that a defendant who had been acquitted by reason of insanity constitutionally could be committed for a period that exceeds the period of the maximum sentence that he could have received and that the defendant in that case was entitled to release only when he recovered and was no longer dangerous. Id., 369–70. The holding of the court in *Jackson*, however, was that, if the government seeks to commit indefinitely a defendant who is not competent to stand trial, the state must "institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen . . . ." *Jackson* v. *Indiana*, supra, 406 U.S. 738. Thus, the court expressly concluded that placing a defendant for treatment indefinitely *without instituting civil commitment proceedings* violates due process. See id. Section 54-56d (i) was specifically intended to prevent this result.

[16] Section 54-56d formerly was codified at General Statutes § 54-40, and the language at issue that now appears in § 54-56d (i) was added in 1977. See Public Acts 1977, No. 77-415, § 1 (codified as amended at General Statutes [Rev. to 1979] § 54-40 [c]).

a different interpretation of § 54-56d (i) would place it in serious constitutional jeopardy, a result that we must seek to avoid. See, e.g., *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 405, 917 A.2d 1 (2007) ("[i]n choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent" [internal quotation marks omitted]). We therefore agree with the defendant that the trial court improperly determined that it was authorized under § 54-56d (i) to place the defendant for treatment for multiple periods that cumulatively exceeded the eighteen month limitation period.

Our conclusion is consistent with the analysis and decision of the Michigan Court of Appeals in *People* v. *Miller*, 186 Mich. App. 238, 463 N.W.2d 250 (1990), rev'd in part on other grounds, 440 Mich. 631, 489 N.W.2d 60 (1992). In *Miller*, the court considered whether, under a Michigan statute[17] analogous to § 54-56d (i), a defendant's placement periods should be treated cumulatively. See id., 241. The court concluded that the time limitation, which under the Michigan statute was fifteen months, "was to run from the initial adjudication of incompetency as opposed to starting anew upon each subsequent adjudication." Id. The court reasoned: "[T]his interpretation is in keeping with the purpose and object sought to be accomplished by the statute, which is to protect defendants from an indefinite suspension of their right to trial. . . . Indeed, it would be

---

[17] The Michigan statute at issue provides in relevant part: "(1) The charges against a defendant determined incompetent to stand trial shall be dismissed:

\* \* \*

"(b) Fifteen months after the date on which the defendant was originally determined incompetent to stand trial." Mich. Comp. Laws Serv. § 330.2044 (LexisNexis 2005).

Although the court in *Miller* used an earlier version of the statute, the pertinent language has not been amended since *Miller* was decided.

anomalous to say that, although this concern is clearly present [when] a defendant has been adjudicated incompetent for a period of fifteen continuous months, it is not so [when] there is a total period of incompetency well over fifteen months, although the period is not continuous. . . .

"We believe that, had the [l]egislature intended for dismissal to occur only upon an adjudication of incompetency for fifteen continuous months, it would have explicitly said so through the use of appropriate language." (Citation omitted.) Id., 241–42.

We recognize that the language of the Michigan statute differs from that of § 54-56d (i). Specifically, the Michigan statute provides that the charges against a defendant determined to be incompetent shall be dismissed "[f]ifteen months after the date on which the defendant was *originally* determined incompetent to stand trial." (Emphasis added.) Mich. Comp. Laws Serv. § 330.2044 (1) (b) (LexisNexis 2005). As the state notes, the court in *Miller* relied in part on the inclusion of the word "originally" in the statute in determining that "the [l]egislature specifically considered the possibility of there being separate adjudications of incompetency and, in such a situation, concluded that the fifteen-month period was to run from the initial adjudication of incompetency as opposed to starting anew upon each subsequent adjudication." *People* v. *Miller*, supra, 186 Mich. App. 241. The court in *Miller*, however, also relied on the purpose of the statute, which was to ensure that defendants are not subject to indefinite pretrial placement for treatment. Id. That constitutional concern also underlay the United States Supreme Court's decision in *Jackson*, which § 54-56d (i) was intended to embrace. Accordingly, we find persuasive the court's holding in *Miller* that each new determination of incompetence did not cause the limitation period of the Michigan statute to start anew.

In sum, we agree with the defendant that he is entitled either to be released from treatment or civilly committed because he was placed for treatment at a mental health facility under § 54-56d (i) for a total period exceeding eighteen months.[18] On remand, the trial court shall determine which of those alternatives is appropriate.

The decision is reversed and the case is remanded for a determination of the relief to which the defendant is entitled.

In this opinion the other justices concurred.

---

[18] We assume, for purposes of the present appeal, that the defendant continues to be incompetent to stand trial. We express no opinion as to whether § 54-56d (i) requires the trial court to release or afford commitment proceedings to a defendant who is found competent to stand trial subsequent to a determination that the statute's eighteen month limitation period has been exceeded.