******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LAWRENCE S. JEZOUIT *v.* DANNEL P. MALLOY ET AL.
## (AC 40839)

DiPentima, C. J., and Moll and Beach, Js.

*Syllabus*

The plaintiff brought this action against the defendant state officials, officers and employees, claiming that telephone calls he had made to them were unlawfully recorded because they failed to obtain his consent or to provide him with notice in violation of statute (§ 52-570d [a]) before recording the calls. The plaintiff sought, inter alia, to permanently enjoin the defendants and all state officials and employees from unlawfully recording telephonic communications in the conduct of state business. The trial court granted the defendants' motion to dismiss and rendered judgment thereon, concluding that § 52-570d did not waive sovereign immunity by force of necessary implication, and that the plaintiff's claim for injunctive relief failed because he did not make substantial allegations of wrongful conduct on the part of the defendants to promote an illegal purpose in excess of their statutory authority. On the plaintiff's appeal to this court, *held*:

1. The trial court properly granted the defendants' motion to dismiss the plaintiff's complaint on the ground that the defendants were immune from suit pursuant to the doctrine of sovereign immunity:

   a. The plaintiff could not prevail on his claim that because § 52-570d authorizes an aggrieved person to bring an action in the Superior Court, as does similar language in the statute (§ 17a-550) that provides remedies for violations of the patients' bill of rights, the only possible interpretation of § 52-570d is that it impliedly waives sovereign immunity: unlike § 17a-550, which makes no distinction between patients of private and public mental health facilities, § 52-570d does not implicate a compelling public policy reason to provide those who have their telephonic communications recorded in an illegal fashion by the government the same civil remedy as those who are recorded illegally by private parties and, thus, no language in § 52-570d required an interpretation that it impliedly waives sovereign immunity; moreover, related statutes that evidenced the remedial nature of § 17a-550 illuminated the breadth of the legislative concern for the fair treatment of mental patients, and a statute's instruction as to what an aggrieved person must file and where to file it did not compel the conclusion that such a statute waives sovereign immunity.

   b. There was no merit to the plaintiff's assertion that because § 52-570d (b) exempts from liability certain state officials, it waives sovereign immunity from suit by necessary implication for those state officials not so designated, such as the defendants: the implicit waiver of sovereign immunity from liability in § 52-570d (a) and (b) did not implicitly waive sovereign immunity from suit, and the exemption of certain state officials in § 52-570d (b) from the provisions of § 52-570d (a) did not require the conclusion that the legislature intended to waive sovereign immunity from suit with respect to those claims, as a statute logically can be interpreted as waiving sovereign immunity from liability with respect to certain state officials but not waiving sovereign immunity from suit with respect to claims against those officials; moreover, where the state waives sovereign immunity from liability but not its immunity from suit, an aggrieved person in such circumstances is not without recourse and may seek recovery against the state by filing a claim with the Claims Commissioner pursuant to statute (§ 4-141 et seq.).

2. The plaintiff could not prevail on his claim that because he sought declaratory and injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of an officer's statutory authority, the trial court improperly dismissed his complaint by failing to apply the exception to sovereign immunity for claims of declaratory and injunctive relief, as the plaintiff failed to alleged a cognizable claim under that exception to sovereign immunity; the trial court properly determined that the complaint did not set forth substantial allegations of wrongful conduct by the defendants to promote an illegal

purpose in excess of their statutory authority, as the plaintiff's interpretation of § 52-570d would impose civil liability on state officials for conduct as innocuous as having an answering system that records voice mails, and the plaintiff failed to allege that the defendants recorded his telephonic communications to promote an illegal purpose and did not allege any purpose behind the recording of his telephonic communications in a manner proscribed by § 52-570d (a).

Argued May 22—officially released October 15, 2019

*Procedural History*

Action, inter alia, to enjoin the defendants from recording certain telephonic communications in the course of their official business, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Elgo, J.*, granted the defendants' motion to dismiss; thereafter, the court granted the plaintiff's motion for reargument and vacated in part its order granting of the defendants' motion to dismiss; subsequently, the court granted the defendants' motion for reconsideration and rendered judgment dismissing the action, from which the plaintiff appealed to this court. *Affirmed*.

*David V. DeRosa*, with whom, on the brief, was *Lawrence S. Jezouit*, for the appellant (plaintiff).

*Maura Murphy Osborne*, assistant attorney general, with whom, on the brief was *George Jepsen*, former attorney general, for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Lawrence S. Jezouit, appeals from the judgment of the trial court dismissing his complaint on the basis of sovereign immunity. The plaintiff argues that the court improperly dismissed his complaint because (1) he brought his claim pursuant to General Statutes § 52-570d, which he contends waives sovereign immunity by force of necessary implication, and (2) he seeks declaratory and injunctive relief in accordance with a recognized exception to sovereign immunity. We disagree and, thus, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In his complaint, the plaintiff alleged that, on May 26, 2010, he sought to record a telephone conversation that he had with an agent of the Internal Revenue Service (IRS). When the plaintiff disclosed to the IRS agent that he was recording their conversation, the agent informed him "that she would cease further discussion and would not continue so long as the call was being recorded." The plaintiff alleged that he believed that it was "unfair" that he could not record the conversation in light of the fact that it was the "reciprocal practice" of the IRS, as well as many other government agencies and business entities, to record such conversations for their own purposes.

After researching the law, the plaintiff concluded that the state's routine practice of recording telephone communications was illegal because state officials failed to obtain consent, or to provide notification to the recorded party, in accordance with the provisions of § 52-570d (a).[1] The plaintiff alleged that he initially had lobbied the state legislature to amend § 52-570d in order to address the fact that the statute had been "outpaced" by certain technological developments and the ubiquitous use of modern telephone answering systems. When his lobbying efforts failed, the plaintiff claimed that he "reluctantly" commenced this action in his own interest and in the interest of the public.

As to the gravamen of his complaint, the plaintiff alleged that he was recorded illegally when, on various dates in March, 2015, he called the defendants (with one exception) and left messages on their respective automated answering systems.[2] The plaintiff alleged that these recordings were obtained illegally because the defendants failed to obtain consent or to provide notice in a manner required by § 52-570d (a). In his prayer for relief, the plaintiff sought "[f]indings that [his] legal rights were invaded by the unlawful recording of his . . . telephonic communications, which caused legal injuries," nominal damages, costs and reasonable attorney's fees pursuant to § 52-570d (c), and "injunctive relief, preliminary and permanent, enjoining the defendants and the state of Connecticut, its officials,

officers, agencies, departments and employees from illegally recording telephonic communications whenever performing any duties or conducting any business on behalf of the state, and in particular from utilizing any device, instruments or equipment, personal or otherwise, to record telephonic communications in violation of . . . § 52-570d and in particular § 52-570d (a) (2)."

On June 18, 2015, the defendants filed a motion to dismiss the plaintiff's complaint in its entirety. In their motion, the defendants argued that the plaintiff's claims were barred by the doctrine of sovereign immunity. In a memorandum of decision, dated August 6, 2015, the trial court granted the defendants' motion on the grounds that § 52-570d did not waive sovereign immunity and that the plaintiff's claim for injunctive relief did not satisfy either of the two exceptions for seeking such relief against the state. On August 27, 2015, the plaintiff filed a motion to reargue, which was granted by the court on September 16, 2015. Following reargument, the court, in an order dated July 5, 2017, vacated its judgment of dismissal, concluding that § 52-570d (c), when read in conjunction with § 52-570d (b), waives sovereign immunity by force of necessary implication.[3] In particular, the court noted that because § 52-570d (b) delineates specific state actors who are not subject to liability under § 52-570d (a), the law implies that "other state and private actors who are not so specified are therefore subject to liability under the statute." On July 24, 2017, the defendants filed a motion for reconsideration of the court's July 5, 2017 order. On September 7, 2017, the court granted the defendants' motion for reconsideration and issued a memorandum of decision, vacating its July 5, 2017 order and dismissing the plaintiff's action on the basis of sovereign immunity.

In its September 7, 2017 memorandum of decision, the court noted that, in accordance with our Supreme Court's holding in *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 978 A.2d 49 (2009) (*Envirotest*), in order for a statute to waive the state's sovereign immunity from suit by force of necessary implication, the waiver must be the "*only possible interpretation* of the [statutory] language." (Emphasis in original.) Id., 390. Applying this holding to § 52-570d, the court concluded that the statute was susceptible to more than one interpretation as to whether it constituted a waiver of sovereign immunity, and, thus, did not operate to waive sovereign immunity by force of necessary implication.[4] From this decision, the plaintiff appeals.[5]

## I

The plaintiff contends that the court improperly dismissed his complaint because § 52-570d waives sovereign immunity by force of necessary implication. We consider this claim to be twofold.[6] First, the plaintiff

argues that § 52-570d (c), which authorizes any person aggrieved by a violation of § 52-570d (a) to bring a civil action for damages, is effectively the same as General Statutes § 17a-550, which our Supreme Court has interpreted as waiving sovereign immunity by force of necessary implication. Second, he contends that because § 52-570d (b) provides that the provisions of § 52-570d (a) do not apply to specific state actors who record telephonic communications in the lawful performance of their official duties, or when such communications are of an emergency nature, the legislature intended the state to be subject to suit to the same extent as private persons for any unlawful recordings that are not exempted by the provisions of the statute. We do not agree.

We begin our analysis by setting forth the legal principles that guide our review. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Macellaio* v. *Newington Police Dept.*, 142 Conn. App. 177, 179–80, 64 A.3d 348 (2013).

"The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . [T]he practical and logical basis of the doctrine [of sovereign immunity] is today recognized to rest . . . on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds, and property. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Citations omitted; internal quotation marks omitted.) *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 65, 23 A.3d 668 (2011).

"The doctrine of sovereign immunity is a rule of common law that operates as a strong presumption in favor of the state's immunity from liability or suit. See *C. R. Klewin* [*Northeast, LLC*] v. *Fleming*, [284 Conn. 250, 258, 932 A.2d 1053 (2007)] (The principle that the state cannot be sued without its consent . . . is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . [T]his court has

recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . [When] there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . In an action against the state in which damages are sought, a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 387–88. The parties agree that § 52-570d does not expressly waive sovereign immunity; therefore, the only issue as to this claim is whether the statute does so by necessary implication.

In *Envirotest*, our Supreme Court explained that in order for a statute to waive sovereign immunity by force of necessary implication, "it is not sufficient that the claimed waiver reasonably may be implied from the statutory language. It must, by logical necessity, be the *only possible interpretation* of the language." (Emphasis altered.) Id., 389–90. Further, because ambiguous language in a statute is by definition "susceptible to more than one reasonable interpretation"; see *Carmel Hollow Associates Ltd.* v. *Bethlehem*, 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004); any ambiguity as to whether the statute waives sovereign immunity by force of necessary implication "is not an ambiguity but, rather, an answer." *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 390. Simply stated, a statute cannot waive the state's sovereign immunity from suit by force of necessary implication when its language is ambiguous because, logically, such ambiguity forecloses the prospect that an implied waiver of sovereign immunity is "the *only possible interpretation* of the [statutory] language." (Emphasis in original.) Id. Thus, unlike our typical process of statutory interpretation pursuant to General Statutes § 1-2z,[7] when the meaning of the statute cannot be ascertained from its plain and unambiguous language, we do not consult extratextual evidence to determine whether the legislature intended to waive sovereign immunity by force of necessary implication. See *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 439, 54 A.3d 1005 (2012). Instead, the existence of an ambiguity "ends the inquiry," and we must conclude that the state's immunity from suit has not been implicitly waived by the statute's language. *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 391.

A

The plaintiff first argues that the court improperly concluded that § 52-570d did not waive sovereign immunity by force of necessary implication because such a

determination is inconsistent with *Mahoney* v. *Lensink*, 213 Conn. 548, 562, 569 A.2d 518 (1990), in which our Supreme Court held that similar language found in the statutory predecessor to § 17a-550[8] waived sovereign immunity by force of necessary implication.[9] Additionally, the plaintiff contends that when a statute provides "what to file" and "where to file it," the statute waives sovereign immunity by force of necessary implication. We disagree.

In *Mahoney*, our Supreme Court addressed, inter alia, whether General Statutes § 17-206k (now § 17a-550) waives sovereign immunity by force of necessary implication. The statute in particular provides a "remedy for those persons aggrieved by violations of any specific provisions of the patients' bill of rights, [General Statutes §§ 17a-540 to 17a-549]," by permitting such persons to petition the Superior Court for appropriate relief or to bring a civil action for damages. *Mahoney* v. *Lensink*, supra, 213 Conn. 555; General Statutes § 17a-550. Because the statute contains no express waiver of sovereign immunity, the court looked to the various statutory provisions that comprise the patients' bill of rights in order to determine whether the legislature intended to waive sovereign immunity implicitly. In so doing, the court found that several of the statutes made no distinction between private and public facilities and that, in order for "the purposes sought to be served by the enactment of the patients' bill of rights," it was necessarily implied "that the legislature intended to provide a direct cause of action against the state and thus to waive its sovereign immunity." *Mahoney* v. *Lensink*, supra, 558.

We conclude that the plaintiff's argument ignores several distinguishing factors between the statute at issue in *Mahoney* and § 52-570d. In particular, *Mahoney* acknowledged that § 17a-550, part of the patients' bill of rights, was a remedial statute and "its provisions should be liberally construed in favor of the class sought to be benefited." Id., 556. The remedial nature of the statute was evidenced by several related statutes that illuminated "the breadth of the legislative concern for the fair treatment of mental patients." Id. Because the patients' bill of rights act made no distinction between patients of private and public mental health facilities, the *Mahoney* court concluded that it was "a necessary implication of *the purposes sought to be served by the enactment of the patients' bill of rights*" that the legislature had waived sovereign immunity as to any claim pursuant to § 17a-550. (Emphasis added; footnote omitted.) Id., 557. Thus, it was a fundamental aspect of the entire legislative act that counseled our Supreme Court to conclude that sovereign immunity had been waived by force of necessary implication. Here, there is no language from which we can conclude that in order for the purposes of § 52-570d to be served, we must interpret the statute as an implied waiver of sovereign

immunity. Specifically, unlike the statute in *Mahoney*, the text of this statute does not implicate a compelling public policy reason for providing persons who have their telephonic communications recorded in an illegal fashion by the government the same civil remedy as those persons who are recorded illegally by private parties. Thus, we are unpersuaded that simply because the language in § 52-570d (c) is similar to § 17a-550, we should conclude that the statute waives sovereign immunity by force of necessary implication.

The plaintiff further contends that, following our Supreme Court's decision in *Mahoney*, the language of § 17a-550 became the "paradigm" for an implied waiver of sovereign immunity. Specifically, he submits that when a statute "instructs an 'aggrieved person' what to file . . . and where to file," our courts have held such language to be an implied waiver of the state's sovereign immunity from suit.[10] In support of this proposition, the plaintiff asks us to compare our Supreme Court's holding in *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 83, 818 A.2d 758 (2003), with the legislature's response to that case in its enactment of No. 03-97 of the 2003 Public Acts.

In *Martinez*, the plaintiff, a former state police trooper, brought suit against the state pursuant to General Statutes § 53-39a, "seeking reimbursement for expenses and costs he had incurred in defending himself against criminal charges that arose out of his alleged conduct during the course of duty." Id., 75. After examining the language of the statute, our Supreme Court concluded that the plaintiff's claims were barred by the doctrine of sovereign immunity because § 53-39a did not include an express or implied waiver of the state's immunity from suit. Id., 88. Shortly after the court's decision was published, the legislature amended the statute to include language that authorized aggrieved persons to enforce the provisions of § 53-39a by way of a private cause of action filed in the Superior Court. See General Statutes (Rev. to 2003) § 53-39a, as amended by Public Acts 2003, No. 03-97, § 2 (P.A. 03-97, § 2).[11] Our Supreme Court has recognized that the 2003 amendment to § 53-39a superseded its decision in *Martinez*. See *Vejseli* v. *Pasha*, 282 Conn. 561, 570 n.8, 923 A.2d 688 (2007).

Although the plaintiff is correct that the legislature amended § 53-39a by adding a provision that authorizes an aggrieved person to bring an action in the Superior Court, we disagree that the interplay between *Martinez* and the 2003 amendment to § 53-39a compels the conclusion that whenever a statute instructs an aggrieved person "what to file" and "where to file," it constitutes a waiver of sovereign immunity. For one, we note that, unlike § 52-570d (c), the provision in § 53-39a specifies that an action to enforce the statute can be brought against the government. See General Statutes (Rev. to

2003) § 53-39a, as amended by P.A. 03-97, § 2. Moreover, "[t]he general purpose of [§ 53-39a] is to permit police officers to recoup [from their employing governmental unit] the necessary expenses that they have incurred in defending themselves against unwarranted criminal charges arising out of their conduct in the course of their employment." *Cislo* v. *Shelton*, 240 Conn. 590, 598, 692 A.2d 1255 (1997). Thus, it is only municipalities and the state that are subject to suit under this particular indemnity statute, and a provision authorizing suit against the employing governmental unit would by logical necessity constitute an implied waiver of sovereign immunity from suit. Such is not the case with § 52-570d (a), which applies generally to any person who uses "any instrument, device or equipment to record an oral private telephonic communication." See *State* v. *Lombardo Bros. Mason Contractors, Inc.*, supra, 307 Conn. 439–40 ("statutory language generally purporting to affect rights and liabilities of all persons *will not be deemed to apply to the state in the absence of an express statutory reference to the state*" [emphasis in original]). Accordingly, we do not agree with the plaintiff that simply because § 52-570d authorizes an aggrieved person to bring an action in the Superior Court, the only possible interpretation of the statute is an implied waiver of sovereign immunity.

B

The plaintiff next argues that § 52-570d waives sovereign immunity from suit by force of necessary implication because subsection (b) of the statute exempts certain state officials who record telephonic communications in the lawful performance of their duties, or in cases of emergency, from the provisions of subsection (a). The plaintiff argues that if we were to conclude that the statute does not waive sovereign immunity from suit, the exemptions provided in subsection (b) vis-à-vis state officials would be rendered superfluous. Put another way, because the statute exempts from liability certain state officials, by necessary implication, the statute waives sovereign immunity from suit for those state officials not so designated, such as the defendants in this action. We conclude that this argument is without merit.

In claiming that the statute implicitly waives sovereign immunity from suit because it exempts certain state actors from the provisions of subsection (a), the plaintiff conflates a waiver of the state's sovereign immunity from liability with a waiver of its sovereign immunity from suit. See *Rivers* v. *New Britain*, 288 Conn. 1, 11, 950 A.2d 1247 (2008) ("[s]overeign immunity is comprised of two concepts, immunity from liability and immunity from suit" [internal quotation marks omitted]). There is a "conceptual distinction between sovereign immunity from suit and sovereign immunity from liability. Legislative waiver of a state's suit immu-

nity merely establishes a remedy by which a claimant may enforce a valid claim against the state and subjects the state to the jurisdiction of the court. By waiving its immunity from liability, however, the state concedes responsibility for wrongs attributable to it and accepts liability in favor of a claimant." (Internal quotation marks omitted.) *Vejseli* v. *Pasha*, supra, 282 Conn. 570 n.8. In such circumstances where the state waives sovereign immunity from liability but not its immunity from suit, an aggrieved person is not without recourse, as he "may seek recovery against the state by filing a claim with the claims commissioner in accordance with General Statutes § 4-141 et seq." *Rivers* v. *New Britain*, supra, 12. Accordingly, we can logically interpret a statute as waiving sovereign immunity from liability with respect to certain state officials but not waiving sovereign immunity from suit with respect to claims against those officials.

Applying this principle to § 52-570d, we read § 52-570d (a) and (b) as an implicit waiver of the state's sovereign immunity from liability but not as an implicit waiver of the state's sovereign immunity from suit. Simply stated, the fact that the statute exempts certain state officials from the provisions of § 52-570d (a) does not require us to conclude that the legislature intended to waive sovereign immunity from suit with respect to those claims. Our conclusion is bolstered by our review of similar statutes, which reveals that when the legislature seeks to waive the state's sovereign immunity from suit in the context of a statutory cause of action, it normally does so by express waiver. See General Statutes § 52-570b (g) ("[a] civil action may be brought under this section against the state or any political subdivision thereof and the defense of governmental immunity shall not be available in any such action"); General Statutes § 52-556 ("[a]ny person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury"). "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003).

In light of the foregoing, we do not agree with the plaintiff that the only possible interpretation of § 52-570d is a waiver of sovereign immunity by force of necessary implication. Thus, we conclude that the statute does not waive the state's sovereign immunity from

suit, and the trial court properly dismissed the plaintiff's complaint on this basis.

## II

In his second claim on appeal, the plaintiff argues that the court improperly dismissed his complaint by failing to apply the recognized exception to sovereign immunity for claims of declaratory and injunctive relief. Specifically, the plaintiff argues that he has sought declaratory and injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of an officer's statutory authority.[12] We disagree and, thus, conclude that the plaintiff has not alleged a cognizable claim under this exception.

As stated previously in this opinion, "[t]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions . . . ." (Citations omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009). The first exception, as discussed in part I of this opinion, occurs "when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity"; the second exception occurs "when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights"; and the third exception occurs "when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Internal quotation marks omitted.) Id. "For a claim under the third exception [to the doctrine of sovereign immunity], the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." (Internal quotation marks omitted.) *Markley* v. *Dept. of Public Utility Control*, supra, 301 Conn. 72; see also *Antinerella* v. *Rioux*, 229 Conn. 479, 486, 642 A.2d 699 (1994) (allegation that defendant terminated plaintiff's employment "to further his own financial gain through [an illegal] fee splitting agreement with various deputy sheriffs" sufficient for purposes of exception to sovereign immunity), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

In its August 6, 2015 memorandum of decision, the trial court concluded that "[t]o the extent that the plaintiff seeks declaratory or injunctive relief, he has failed to assert claims that amount to a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority. Quite simply, the defendants have voice mail systems which the plaintiff knowingly utilized to leave voice mail messages. Such conduct could not be more benign."[13] (Internal quotation marks omitted) We agree.

As we noted previously in this opinion, the plaintiff alleged that all but one of the defendants illegally recorded him in violation of § 52-570d (a), when he called them and left messages on their respective automated answering systems. See footnote 2 of this opinion. The plaintiff maintains that because those recordings were created without the defendants' obtaining consent from all parties, or providing proper notification, they constituted illegal recordings under § 52-570d (a). Here, the plaintiff's interpretation would impose civil liability on state officials for conduct as innocuous as having an answering system that records voice mails. We agree with the trial court that the plaintiff's complaint does not set forth "substantial allegations" of wrongful conduct to promote an illegal purpose in excess of the state officers' statutory authority.

The plaintiff alleged that the defendants violated § 52-570d (a) in recording his telephonic communications. Specifically, the plaintiff's complaint asserts that he initiated telephone communication with the various defendants, with the exception of Governor Malloy, and that, as a result, "a ringtone was activated and operated until the state's instrument, device or equipment, in sequence, activated a verbal notification, also known as a greeting, a tone, and then made a recording of the [p]laintiff's communication through to [p]laintiff's termination of the communication." Accordingly, we conclude that these allegations are not "substantial" allegations of wrongful conduct sufficient to satisfy the third exception to the doctrine of sovereign immunity. See *Braham* v. *Newbould*, 160 Conn. App. 294, 313, 124 A.3d 977 (2015) (inmate's claim that he was charged twice for his eyeglass prescription in violation of § 18-85a-3 of Regulations of Connecticut State Agencies was not substantial allegation of wrongful conduct).

The third exception to sovereign immunity also requires an allegation that the state officer's wrongful conduct promoted an illegal purpose in excess of the officer's statutory authority. See *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 349. In the present case, the plaintiff also has failed to allege that the defendants recorded his telephonic communications to promote an illegal purpose. Indeed, the plaintiff has not alleged *any* purpose behind the defendants' recording of his telephonic communications in a manner proscribed by § 52-570d (a). Because a plaintiff seeking to bring a claim pursuant to this exception must allege facts that, if proven, would show that a state official acted in excess of his or her authority to promote an illegal purpose, the trial court properly granted the defendants' motion to dismiss on the basis of sovereign immunity. See *Carter* v. *Watson*, 181 Conn. App. 637, 642, 187 A.3d 478 (2018) ("[i]n the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a

motion to dismiss on sovereign immunity grounds is proper" [internal quotation marks omitted]). For these reasons, we conclude that the plaintiff failed to allege a cognizable claim under the third exception to sovereign immunity and, therefore, this claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-570d (a) provides: "No person shall use any instrument, device or equipment to record an oral private telephonic communication unless the use of such instrument, device or equipment (1) is preceded by consent of all parties to the communication and such prior consent either is obtained in writing or is part of, and obtained at the start of, the recording, or (2) is preceded by verbal notification which is recorded at the beginning and is part of the communication by the recording party, or (3) is accompanied by an automatic tone warning device which automatically produces a distinct signal that is repeated at intervals of approximately fifteen seconds during the communication while such instrument, device or equipment is in use."

[2] The defendants, all of whom are named in their official capacities with the state of Connecticut, are: Governor Dannel P. Malloy, who was replaced as a defendant, upon a motion granted by this court, by his successor, Governor Edward M. Lamont, Jr.; Colleen M. Murphy, general counsel for the Freedom of Information Commission; Martin M. Looney, President Pro Tempore, Joint Committee on Legislative Management; Adam Joseph, press aide to Senator Martin M. Looney; Joe Aresimowicz, Speaker of the House of Representatives; Andrea Furlow, legislative assistant; Leonard A. Fasano, Senate Minority Leader, Joint Committee on Legislative Management; Themis Klarides, Minority Leader of the House of Representatives, Joint Committee on Legislative Management; Edwin Vargas, state representative; Francesco P. Sandillo, legislative assistant to Representative Edwin Vargas; John A. Mockler, technology manager, Office of Information Technology Services, Office of Legislative Management; William F. O'Shea, attorney, Legislative Commissioner's Office; Judge Patrick L. Carroll III, Chief Court Administrator; Sharon Wilson, executive secretary, Office of the Chief Court Administrator; Martin R. Libbin, director, Legal Services; Leann R. Power, public records administrator; and Sara E. Cheeseman, public records archivist.

The plaintiff did not allege that he called Governor Malloy; rather, he alleged that Governor Malloy "is the supreme executive authority of the state of Connecticut pursuant to the powers vested in him by section five of article fourth of the constitution of the state of Connecticut. Section twelve of the same article requires that, as such, he 'shall take care that the laws be faithfully executed.' Governor Malloy has failed to take care that his agents comply with General Statutes § 52-570d."

[3] General Statutes § 52-570d (b) provides: "The provisions of subsection (a) of this section shall not apply to:

"(1) Any federal, state or local criminal law enforcement official who in the lawful performance of his duties records telephonic communications;

"(2) Any officer, employee or agent of a public or private safety agency, as defined in section 28-25, who in the lawful performance of his duties records telephonic communications of an emergency nature;

"(3) Any person who, as the recipient of a telephonic communication which conveys threats of extortion, bodily harm or other unlawful requests or demands, records such telephonic communication;

"(4) Any person who, as the recipient of a telephonic communication which occurs repeatedly or at an extremely inconvenient hour, records such telephonic communication;

"(5) Any officer, employee or agent of any communication common carrier who in the lawful performance of his duties records telephonic communications or provides facilities to an investigative officer or criminal law enforcement official authorized pursuant to chapter 959a to intercept a wire communication;

"(6) Any officer, employee or agent of a Federal Communications Commission licensed broadcast station who records a telephonic communication solely for broadcast over the air;

"(7) Any officer, employee or agent of the United States Secret Service who records telephonic communications which concern the safety and security of the President of the United States, members of his immediate family or

the White House and its grounds; and

"(8) Any officer, employee or agent of a Federal Communications Commission broadcast licensee who records a telephonic communication as part of a broadcast network or cooperative programming effort solely for broadcast over the air by a licensed broadcast station."

General Statutes § 52-570d (c) provides: "Any person aggrieved by a violation of subsection (a) of this section may bring a civil action in the Superior Court to recover damages, together with costs and a reasonable attorney's fee."

[4] In its third decision, from which the plaintiff appeals, the court stated that its July 5, 2017 order, which vacated the August 6, 2015 decision dismissing the plaintiff's complaint, was limited to the issue of whether the statute waives sovereign immunity by force of necessary implication. Accordingly, the court stated that it would not revisit the issue of whether the plaintiff had sought declaratory and injunctive relief in accordance with one of the exceptions to sovereign immunity, as that portion of the August 6, 2015 decision was not subject to reconsideration.

[5] The defendants argue that we can affirm the decision of the trial court on the alternative basis that the plaintiff lacks standing to bring this action. Because we agree with the trial court that the action is barred by the doctrine of sovereign immunity, we need not address the standing issue in this appeal. See *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 517, 187 A.3d 1154 (2018) (affirming judgment of trial court and declining to reach alternative jurisdictional basis for dismissal).

[6] We note that the plaintiff also argues that the court failed to correctly apply General Statutes § 1-2z when it concluded that § 52-570d did not waive sovereign immunity by force of necessary implication as to the facts presented in this case. Specifically, he contends that the court improperly concluded that, on the basis of the allegations of the complaint, the plaintiff implicitly consented to being recorded and, irrespective of whether the statute waived sovereign immunity by force of necessary implication in other contexts, it did not waive sovereign immunity under this particular set of facts. The plaintiff argues that such a conclusion is contrary to our process of statutory interpretation and the plain and unambiguous language of § 52-570d (a), which he contends sets forth the exclusive means of obtaining consent or providing notice with respect to the recording of a telephonic communication. Given that our review of a trial court's interpretation of a statute is plenary; see *Aurora Loan Services, LLC* v. *Condron*, 181 Conn. App. 248, 277, 186 A.3d 708 (2018); and our conclusion that the statute does not waive sovereign immunity in any factual context is dispositive with respect to the plaintiff's first claim on appeal; see part I B of this opinion; we see no reason to address the issue of whether the court correctly applied § 1-2z when it concluded that the statute did not waive sovereign immunity under this particular set of facts.

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[8] General Statutes § 17a-550 provides: "Any person aggrieved by a violation of sections 17a-540 to 17a-549, inclusive, may petition the superior court within whose jurisdiction the person is or resides for appropriate relief, including temporary and permanent injunctions, or may bring a civil action for damages."

[9] As a threshold matter, we note that *Mahoney* was decided before *Envirotest* and the enactment of § 1-2z. Nonetheless, our Supreme Court in *Envirotest* interpreted *Mahoney* as establishing, and correctly applying, the rule that an implied waiver of sovereign immunity must be the "*only possible interpretation* of the [statutory] language," without consultation of extratextual sources. (Emphasis in original.) See *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 390; but see id., 401–402 (*Katz, J.*, concurring) (In *Mahoney*, "the issue was whether [General Statutes] § 17-206k [now § 17a-550], in providing a statutory remedy for those persons aggrieved by violations of any specific provisions of the patients' bill of rights . . . constitutes an abrogation of sovereign immunity so as to authorize a voluntary patient in a state mental facility to sue the state or its commissioners. Acknowledging that this question required a strict construction of the statute, the court concluded that a waiver was compelled by necessary implication. . . . Although the court concluded that the necessary implica-

tion arose from the text of related provisions, which included references to any public . . . facility . . . the court extensively examined the legislative history to confirm this construction. . . . Indeed, the fact that the lion's share of the court's analysis focused on this history indicates that it was integral to the court's conclusion and not mere dicta." [Citations omitted; internal quotation marks omitted.]).

[10] The plaintiff argues that § 52-570d (c) satisfies the requirements for an implied waiver of sovereign immunity because it instructs "any person aggrieved" to file "a civil action" with "the Superior Court."

[11] General Statutes (Rev. to 2003) § 53-39a, as amended by P.A. 03-97, § 2, provides: "Whenever, in any prosecution of an officer of the Division of State Police within the Department of Public Safety, or a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred. Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section."

[12] With respect to this claim, the plaintiff also argues that he should not be required to plead a "substantial" allegation of wrongful conduct because he asserts this court improperly added this requirement in conflict with existing precedent at the time. In particular, the plaintiff contends that the exception, as it was announced in *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003), did not include such a requirement; rather, it was added by this court two years later in *Tuchman* v. *State*, 89 Conn. App. 745, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005). The plaintiff acknowledges, however, that our Supreme Court has reiterated the exception as it was explained in *Tuchman*, including the requirement that the allegation of wrongful conduct be substantial, in cases subsequent to *Miller*. See, e.g., *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009). "[I]t is well established that this court, as an intermediate appellate tribunal, is not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court. . . . Furthermore, it is axiomatic that one panel of [the Appellate Court] cannot overrule the precedent established by a previous panel's holding." (Citation omitted; internal quotation marks omitted.) *St. Joseph's High School, Inc.* v. *Planning & Zoning Commission*, 176 Conn. App. 570, 595, 170 A.3d 73 (2017). Accordingly, in light of the fact that our Supreme Court has clearly endorsed such a requirement subsequent to its decision in *Miller*, we find no merit in the plaintiff's position that his allegations of wrongful conduct against the defendants need not be substantial.

Further, our reading of our Supreme Court's holding in *Miller* reveals that the plaintiff's contention is misplaced insofar as he argues that this court imparted the requirement that an allegation of wrongful conduct against the state be "substantial" in conflict with *Miller*'s holding. Prior to *Miller*, our Supreme Court held in *Antinerella* v. *Rioux*, 229 Conn. 479, 497, 642 A.2d 699 (1994), overruled in part by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003), that sovereign immunity did not bar a claim against the state based on a substantial allegation of wrongful conduct to promote an illegal purpose in excess of an officer's statutory authority. *Miller* overruled *Antinerella* only to the extent that such case held that sovereign immunity did not bar "monetary damages actions against state officials acting in excess of their statutory authority." *Miller* v. *Egan*, supra, 265 Conn. 325. *Miller* did not address, nor overrule, the requirement that a claim brought pursuant to this exception be predicated on a "substantial allegation" of wrongful conduct. See *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 349 (citing *Antinerella* v. *Rioux*, supra, 497). Indeed, to conclude otherwise would require us to read *Miller* as implicitly overruling decades of precedent with respect to the requirements for seeking injunctive relief on the basis of wrongful conduct. See *Bendell* v. *Johnson*, 153 Conn. 48, 51, 212 A.2d 199 (1965) ("[O]nly those whose justiciable interests were injured . . . would, in a proper case, be entitled to seek redress in an action for injunctive relief. . . . [A] justiciable interest is at least one founded on the imminence of substantial and irreparable injury. . . . An injunction is

not a matter of right. Rather, its issuance rests within the sound discretion of the court. . . . The principle that an injunction will not issue for a trifling, inconsequential or technical injury to a plaintiff's rights has been consistently followed." [Citations omitted; internal quotation marks omitted.]); see also *Scoville* v. *Ronalter*, 162 Conn. 67, 74, 291 A.2d 222 (1971) ("[t]he plaintiffs must allege facts which, if proven, would establish irreparable injury and assume the burden of proving facts which will establish substantial and irreparable damage if they are to prevail in their request for injunctive relief").

[13] This portion of the trial court's August 6, 2015 memorandum of decision was not vacated by the July 5, 2017 order. See footnote 4 of this opinion.

————————————————————